543 A.2d 558

**Nelle Vastine McCABE, Appellee,**

**v.**

**J. Grant McCABE, III, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1987.

Filed May 31, 1988.

Bancroft D. Haviland, Philadelphia, for appellant.

Hope C. Lefeber, Philadelphia, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, DEL SOLE, MONTEMURO, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

BROSKY, Judge:

This is a consolidated appeal. Appellant has appealed from final orders providing for alimony, alimony pendente

lite, distribution of property and the awarding of counsel fees and expenses.

Appellant has challenged the trial court's valuation of marital property and distribution of marital property, the awarding of alimony, alimony pendente lite and counsel fees and expenses, and has also challenged the procedure utilized by the Montgomery County Court of Common Pleas. Because we find that the trial court erred in the valuation of marital property, we will affirm the orders in part, vacate in part, and remand the case to the trial court for further proceedings.

The parties to this action were married in 1948 and separated in July of 1980. Appellant has pursued a career in law, and for many years has been associated with the firm of Rawle & Henderson, located in Philadelphia. Appellant is currently a partner in that firm. Appellee has never been employed for compensation, but took an active role in raising and caring for the parties' five children. The record indicates that appellant's gross income from his law practice approximates $150,000 per year and has approximated this figure for many years. At the time of the filing of briefs appellant was 62 years of age while appellee was age 60.

An action in divorce was filed by appellee on January 26, 1981. After several hearings and the passing of much time, the orders in question were issued by the Court of Common Pleas of Montgomery County. Marital property was valued at more than $590,000 by the trial court. The equitable distribution order called for distribution as follows:

To appellee:

| | |
|---|---:|
| Personalty | $ 8,231.00 |
| Stock (including net increase) | 60,207.55 |
| Pension Plan (appellant's) | 60,638.63 |
| Home | 140,000.00 |
| Loan | 4,500.00 |
| Boat | 12,000.00 |
| Cash | 15,500.00 |
| | $301,077.18 |

454

To appellant:

| | |
|---|---:|
| Partnership interest | $286,276.00 |
| Stamp Collection | 5,430.00 |
| Life Insurance | 1,951.00 |
| | $293,657.00 |

Appellant was also ordered to pay appellee $2,500.00 a month alimony for an indefinite period of time and the sum of $33,047.43 for counsel fees and expenses.

Appellant argues that the court erred in valuing appellant's partnership interest in excess of $286,000.00 and, therefore, abused its discretion in distributing the marital property as it did. After careful consideration of this contention, we are inclined to agree.

■ There can be no doubt that the passage of the Divorce Code in 1980 has given rise to a number of interesting and difficult issues in property distribution. Business interests are properly included in the marital estate, and there is no reason to exclude a professional practice from the classification of marital property as well. In the present case, the partnership interest appellant has in the firm of Rawle & Henderson was acquired during the marriage, and is, therefore, marital property and properly a subject of equitable distribution. Appellant does not dispute this, but contends that the figure assigned as a representative value is not founded in economic reality.

Judicial experience leads us to state that the difficulty in valuing marital property becomes more acute when the subject of the valuation becomes less tangible. Undoubtedly, the partnership interest in this case is much more difficult to value than the parties' stock. Although both could be classified as business interests, the stocks are considerably easier to valuate, as they are readily transferable for consideration on the appropriate market. Furthermore, and perhaps more importantly, they do not require active participation by the owner. Similarly, a small business owner, while perhaps actively involved in the business's operation, is capable of selling his business and realizing its value. However, the case of valuating the

interest of a professional corporation or a sole proprietorship, is full of difficulties and the subject of much debate.

Any business enterprise operates on a principle of utilizing or employing assets to derive income from its operation. When an individual owns stock in a corporation, he owns a proportionate share of the assets, and the right to receive the income derived from the utilization of the assets. This principle applies as well in a small business or in a professional practice. However, in the professional practice, the professional plays a far more important role in the derivation of profits or income and can, in fact, be considered the major "asset" of that concern. Moreover, in professional practices, the value of the expertise or knowledge often far outweighs the value of the more tangible capital assets employed in the practice. In this respect, the profits drawn from the professional practice can be traced, in a sense, to the employment of both tangible and non-tangible assets. However, the non-tangible asset, the expertise and training, is part and parcel of one of the parties to the action: hence, making distribution of such an asset impossible and awarding commensurate compensation to the other spouse problematic at trial. The court cannot sever part of the surgeon's training and expertise and award it to a spouse, although such training and experience undoubtedly has "value" to one who possesses it and even though one spouse may have contributed greatly to its acquisition. Nor have our courts held that such intangible assets are even marital "property" subject to equitable distribution.

In *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986), our Supreme Court affirmed a panel decision of this Court holding that increased earning capacity is not a divisible asset subject to equitable distribution. The court indicated that it is not proper to award one spouse a share of the other spouse's future earnings, even if the increased capacity for earning was acquired during the marriage.

Perhaps in awareness of this Court's decision in *Hodge*, the trial court stressed that evaluation of appellant's partnership interest was in no way based upon appellant's

expectation of future income. Rather appellee's expert evaluated the partnership as "a going concern." His evaluation included, but was not necessarily limited to, such items as equipment, cash, accounts receivable and work-in-progress (services rendered but not yet billed). Appellant's partnership interest was derived by dividing the value of the partnership by his percentage of "ownership" in the firm. This resulted in a figure of approximately $286,000. If appellant enjoyed all the benefits of true ownership, i.e. the ability to sell, liquidate or otherwise realize the value assigned to his interest, we might be inclined to affirm the equitable distribution order in question. However, it has been clearly established in this case that appellant cannot realize the value assigned for his partnership interest by appellees' expert. Consequently, we cannot affirm that order.

Like many business enterprises, the firm of Rawle & Henderson has an agreement which defines the rights of each partner. Under the Rawle & Henderson partnership agreement, a partner whose partnership status ends is compensated upon leaving pursuant to terms in the agreement. However, the agreement limits compensation to the partner's share of the capital account and, if 90 days notice is given, the partner's share of undistributed profits to date. The partnership agreement does not allow a partner to receive his "share" of the "accounts receivable" or "work-in-progress" accounts, but rather, only his share of the capital account. Nor does a partner possess the right to sell his "partnership interest" to another individual or the right to retire from active participation in the practice while continuing to receive a share of profits. Conveniently, the trial court has treated or characterized all payments to appellant from Rawle & Henderson as income. No distinction has been drawn between appellant's monthly draw and the year end distribution of profits. Consequently, under the terms of the partnership agreement, appellant can look forward to leaving the partnership with only his capital account over and above what has been treated as his normal compensation for his association with, and labor for, Rawle

& Henderson. At the time of separation appellant's capital account was at $18,900.

■ Appellee and the trial court have referred to the partnership agreement as defining the value of the partner's interest in the partnership. However, more correctly stated, the partnership agreement contains terms from which the value of a partner's interest can be ascertained. The agreement does not purport to set a value on appellant's interest in the firm. Moreover, these terms establish substantive rights of the partner, and if a true value of the interest is to be ascertained, the rights and limitations of the partner, as set forth in the agreement, cannot be disregarded.[1] What appears clear from the terms of the agreement is an intention that the life of Rawle & Henderson, as a firm, be placed in preference to the interest of any particular partner of the firm. If a partner's status as a partner ends, either voluntarily or involuntarily, he does not receive his commensurate share of *all* the partnership's assets or a share of its *total value*. He receives only his capital account, and, if he gives the requisite notice, his share of the undistributed profits, a sum which he would have received anyway had he stayed on with the firm. A partner in the firm of Rawle & Henderson is far different from an individual who owns his own business and has an opportunity to sell it. If appellant owned a machine shop, for instance, with a current market value of $286,000, the equitable distribution order would approach a state of equi-

---

1. Indeed, in *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545, 552 (1986), in comparing a sole proprietorship to a partnership we stated:
   A sole proprietorship can be distinguished from a partnership ... to which an ascertainable value can be ascribed for the purpose of buying into or withdrawing from the relationship; *but it is the association, or some share of it, that is valued* and not the individual partner upon which the value is placed.

   .     .     .     .

   That share is a measurable and marketable commodity and is generally defined by contract. (Emphasis in original, citation omitted).

   However, under the terms of the Rawle & Henderson agreement, the partnership interest or "share", although perhaps measurable, is not truly that marketable.

ty, for appellant could then sell his business, if he so chose, and walk away from the divorce proceedings in comparable stead with appellee. Or, if he so chose, he could defer the realization of the business's value until a later sale date, perhaps retirement. But, the important point is that the value assigned for equitable distribution purposes would be realizable or ascertainable to the spouse to which it is assigned, in this case appellant. In the present case, if appellant chose to terminate his partnership status and retire at the termination of the equitable distribution proceedings, appellant, who was approximately age 62 at the time, would have come away from those proceedings with approximately $26,000 worth of cash and personalty compared to the $301,000 worth of property awarded appellee. This hardly appears equitable to this court. Appellant's status as a partner is more similar to a high paid executive in a corporation who holds, under a stock option plan, $18,900 worth of the corporation's stock. He may have some managerial imput and he may have a limited ownership interest in a portion of the business' assets, but under the partnership agreement his ownership interest does not reach to the extent depicted by the trial court. It is possible, and indeed likely, that partners in other law firms possess greater ownership rights than does appellant. Such individuals may be entitled, upon leaving their firm, to a commensurate portion of the accounts receivable and unbilled time, or, in other words, a commensurate share of the firm valued as a "going concern." [2] However, appellant

2. Indeed, many of the cases cited by appellee in support of her position do not consider situations, such as here, where the partner in the firm is limited to his capital account upon ending his association with the firm. *In re Marriage of Morris,* (Mo.Ct.App.), 588 S.W.2d 39 (1979); *Grayer v. Grayer,* 147 N.J.Super. 513, 371 A.2d 753 (1977), and *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975), all involved law partnerships where the partner spouse was entitled to more than his capital account upon disassociation with the firm. This is not a trivial point. By limiting the value received upon leaving the firm to the capital account, Rawle & Henderson has eliminated most of the benefits usually attendant to an ownership interest. Perhaps the most beneficial interest associated with appellant's partnership status is an opportunity to earn a substantial income. But such future earnings are not marital property. The key distinction between the cases cited

does not possess such rights and equity will not be served by pretending, for equitable distribution purposes, that he does.

It is readily apparent that both appellant and appellee have benefitted economically from appellant's association with Rawle & Henderson over the years. Appellee should not now be heard to complain that her ex-husband will not receive a share of the total of Rawle & Henderson's assets. Nor will she be successful in getting this Court to overlook such substantial restrictions in the partnership agreement so that she can benefit to the detriment of appellant.[3] In short, the equitable distribution order awarded appellee virtually all the property acquired during the course of the marriage, including the parties' home, boat, stock, cash and all of appellant's pension to date of separation. The order awarded appellant his stamp collection and a life insurance policy, together worth approximately $7,000, and the $18,-900 in appellant's capital account, while apparently recognizing that appellant would continue to earn a substantial amount of money for at least a few years to come.[4] This is

above and the present case is that the partner in the above cited cases would be able to receive from the firm, upon leaving, a sum approximating the sum assigned to the partnership interest by the court. In this respect, although realization of the value of the partnership interest was deferred until the partner-spouse ended his association with the firm, it was indeed realized at some point in time. Here, appellant will receive only his capital account upon leaving Rawle & Henderson. Appellant will not receive from Rawle & Henderson a sum anywhere near the $286,000 which the trial court has assigned to his partnership interest when he leaves the firm.

3. Appellee appears to concede the fact that appellant will not, nor cannot, receive the sum of $286,000 upon leaving the firm. She states in her brief:

It is precisely this point—i.e., the fact that the partnership agreement in this case did not provide for the partner to receive a sum which truly reflects his share of the assets, which mandates that the partnership agreement be disregarded.

4. We note that the trial court specifically indicated that the valuation of appellant's partnership interest was in no way based upon expectations of future income. Opinion, 11/26/1985 at p. 16. However, later in its opinion, the trial court states:

The defendant is remaining with the firm as an ongoing concern. As such, he will enjoy the benefits of a part owner far in excess of

460

precisely what the Supreme Court has prohibited in *Hodge v. Hodge, supra.*

Appellant also challenges the award of alimony, alimony pendente lite and counsel fees to appellee. Alimony pendente lite was awarded at a rate of $2,000 per month. Alimony was awarded at a rate of $2,500 per month and counsel fees were awarded at an amount of $33,047.43. Upon consideration of the record and arguments presented in behalf of both parties, we affirm the award of alimony, alimony pendente lite and counsel fees.

■■■ The thrust of appellant's arguments regarding the awarding of alimony pendente lite and counsel fees is that the award was inappropriate in light of the fact that appellee has several hundred thousand dollars worth of non-marital property and has been realizing an annual income from her holdings of approximately $30,000 per year during the proceedings. Appellant correctly indicates that the purpose of allowing alimony pendente lite and counsel fees is "to promote the fair and impartial administration of justice by enabling the dependent spouse to maintain or defend the principal action in divorce without being placed at a financial disadvantage." *Sutliff v. Sutliff,* 326 Pa.Super. 496, 500, 474 A.2d 599, 600 (1984). However, we disagree with appellant's assertion that appellee's investment income and personal holdings prevents her from being placed at a financial disadvantage. Much of appellee's personal property is non-income producing. Further, the trial court has found that appellee's reasonable expenses, based upon her accustomed lifestyle, approximate $65,000 a year. Additionally, due to the extensive litigation in this case, appel-

what he would enjoy if he retired, died or withdrew from the partnership. It is this ongoing economic enjoyment that the Court is trying to capture for equitable distribution purposes. *Id.* at 52. This statement sounds as if the valuation is, indeed, based upon expectation of future earnings. Furthermore, appellee's expert stated, "I think the term going concern as applied to a business entity does represent expectation of future profits, ..." Additionally, if it is given that appellant can leave the firm with only the value of his capital account, we fail to see how the valuation can have any validity unless future earnings are taken into account.

lee's legal fees have approached $100,000. Obviously, these financial demands have strained her investment income of approximately $30,000 a year. When appellee's expenses are considered and her gross income of $30,000 is compared to appellant's gross income of over $100,000, it would appear that appellee is indeed in a disadvantageous position. Consequently, we cannot say the trial court abused its discretion in awarding alimony pendente lite or counsel fees.

▇ Appellant also argues that the trial court did not determine appellee's reasonable needs for alimony purposes, but rather, accepted her history of extravagant expenditures as equivalent to her reasonable needs. As a general rule, awards of alimony will not be disturbed on appeal absent an abuse of discretion on the part of the trial court. *Teribery v. Teribery*, 357 Pa.Super. 384, 516 A.2d 33 (1986). The trial court found appellee's expenses to approximate $65,000 to $70,000 per year and appellant's expenses to approximate $57,000 per year. The trial court ordered alimony of $2,500 a month. This amount added to her investment income brings appellee's yearly gross income to approximately $60,000. Although appellee's expenses of $65,000 per year may seem excessive to many individuals, the figure is not out of line with the lifestyle which the parties had attained, and to which they had become accustomed during their marriage. Furthermore, when tax considerations are taken into account, the award will not cost appellant, out-of-pocket, nearly the sum of $30,000. In light of the disparate incomes of the parties, we cannot conclude that the trial court abused its discretion in ordering alimony.

The order of equitable distribution is vacated and the case is remanded for a redetermination of equitable distribution in accordance with this Opinion. The orders awarding alimony, alimony pendente lite and counsel fees are af-

firmed in this regard.[5]

CIRILLO, President Judge, and POPOVICH, J., joined.

DEL SOLE, J., filed a concurring and dissenting opinion joined by KELLY, J.

JOHNSON, J., filed a concurring and dissenting opinion joined by CAVANAUGH, MONTEMURO and TAMILIA, JJ.

CAVANAUGH, J., filed a concurring and dissenting opinion joined by MONTEMURO, TAMILIA and JOHNSON, JJ.

DEL SOLE, Judge, concurring and dissenting:

I join the majority in the determination that the trial court overvalued for equitable distribution purposes the appellant's partnership interest. I would point out that since the appellant could in no way unilaterally secure any amount from the partnership upon his removal therefrom beyond that set forth in the partnership agreement his interest should be limited to that amount. However, I part company with my colleagues in the majority when they affirm the decision of the trial court with respect to alimony and counsel fees. The learned trial judge in this case entered a comprehensive opinion and order of court which interrelated the equitable distribution, the alimony and the counsel fee questions. To upset the equitable distribution finding and not permit the trial court to once again look at the alimony and counsel fee question in my view is incorrect. See *Thomson v. Thomson*, 359 Pa.Super. 540, 519 A.2d 483 (1986).

KELLY, J., joins.

5. We find appellant's challenge to the procedure used by the Montgomery County Court of Common Pleas waived for failure to assert it below. P.R.A.P. 302.

JOHNSON, Judge, concurring and dissenting:

My review of the entire record in this case and the briefs of the respective parties leads me to conclude that the orders from which these consolidated appeals have been taken should be affirmed in all respects.

I join the majority in finding that the award relating to alimony, alimony pendente lite, counsel fees and costs is entirely sound and well within the discretion vested in the trial judge. I depart from my colleagues on the issue of the valuation of the partnership interest in the law firm.

We are bound by an abuse of discretion standard of review in determining the propriety of property distribution. We will not usurp the trial court's duty as factfinder nor will we adopt guidelines or presumptions in addition to those set forth by the legislature. *King v. King,* 332 Pa.Super. 526, 529–30, 481 A.2d 913, 914–15 (1984).

The trial court found that the partnership agreement, upon which appellant relies, did not reflect appellant's true interest in the firm of Rawle & Henderson. I agree with this conclusion. Appellant did not take exception to the trial court's finding that the provisions of the agreement for determining the value of a partner's interest had not significantly changed since 1963. Nor is there any dispute that the only valuations directly calculable from the terms of the agreement are the value of a partner's interest (1) at death, (2) at withdrawal on 90–days' notice, and (3) at withdrawal on less than 90–days' notice.

The trial court correctly determined that none of these three situations were relevant to the matters before it, where appellant remains with the firm as an ongoing concern, enjoying the benefits of a part owner far in excess of what he would enjoy if he were to retire.

I find nothing in the Divorce Code to authorize or even to permit this court to speculate about what a party *might do* in the future, in determining the value of a marital asset for purposes of equitable distribution. In this case, the court had the benefit of the testimony of a certified public ac-

countant specializing in the evaluation of professional prac-
tices. He was found to be competent to testify as an expert
regarding economic issues such as evaluation of a profes-
sional practice.

Appellant took no exception to the expert's qualifications,
but rather argues on appeal that the expert's testimony
should have been rejected as "superficial" and incomplete.
My review of the record, and particularly the testimony of
the wife's expert, Stanton L. Meltzer, and that of appellant,
J. Grant McCabe, III, persuades me that there is sufficient
competent evidence in the record to support a finding of
$286,276 as being a reasonable valuation of appellant's
interest in the partnership as of the date of separation.

The distinguished trial judge, the Honorable Paul W.
Tressler, is to be commended for recognizing that the
Rawle & Henderson partnership agreement did not take
into consideration the factors necessary for an accurate
valuation of the partner's interest and consequently had to
be disregarded. The wife's valuation properly included
partnership accounts receivable, accounts payable, work in
progress, inventory and capital accounts. The expert made
what the trial court found to be reasonable adjustments in
those areas where appellant and his law firm had not
provided sufficient data to permit a precise calculation as of
the date of separation. I can find no fault with this
procedure.

While it may be true, as my colleagues state, that the
valuation of an intangible, partnership interest may be full
of difficulties and the subject of much debate, we still must
return to the narrow question of whether an abuse of
discretion arises where inadequate testimony from one par-
ty is rejected and the trial court fashions an award from the
remaining evidence as submitted by an expert.

The majority asserts that it has been clearly established
in this case that appellant cannot realize the value assigned
for his partnership interest by the wife's expert. I must
respectfully disagree. Appellant has neither retired nor
withdrawn from the firm, on the record before us. I find

nothing in the record to dispute the value as a going concern placed upon the partnership by the wife's expert. A trial judge is not expected to look ten years down the road to guess about what a party's interest *might be* in the future, based on varying assumptions.

The trial judge's role is to take the evidence presented in the record and decide each case on the established facts contained therein. I believe our role, as a reviewing court, is to ascertain whether this obligation of the trial judge has been met. I find no fault with the extremely meticulous and exhaustive disposition of Judge Tressler. I therefore would affirm both orders.

CAVANAUGH, MONTEMURO and TAMILIA, JJ., join.

CAVANAUGH, Judge, concurring and dissenting:

I join the concurring and dissenting opinion by Judge Johnson in all respects and would add the following.

In my opinion, it is clear that the court below did not abuse its discretion in valuing Mr. McCabe's interest in the partnership of Rawle and Henderson at $286,276.00. The majority opinion considers only the partnership agreement in placing a valuation for equitable distribution of marital property and concludes that the appellant's interest in his law firm is approximately $19,000.00. In my opinion, this valuation is totally unrealistic and does not represent a correct valuation of his interest. A partnership agreement is only one factor to consider and even then, as in this case, the partnership agreement is unlikely to deal with valuation of a partner's interest vis a vis equitable distribution upon dissolution of the marital relationship. Generally, a partnership agreement will deal with valuation upon the voluntary withdrawal, death of a partner or dissolution of the firm. *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257, 261 (1975) lists other factors which must be considered:

> Generally speaking the monetary worth of this type of professional partnership will consist of the total value of the partners' capital accounts, accounts receivable, the

value of work in progress, any appreciation in the true worth of tangible personalty over and above book value, together with good will, should there in fact be any; the total so arrived at to be diminished by the amount of accounts payable as well as any other liabilities not reflected on the partnership books.

See *Pennsylvania's Equitable Distribution, Progress or Confusion?*, 60 Temple Law Quarterly 293 (1987)[1] While the Divorce Code provides for the equitable distribution of marital property, it gives no guidance on determining the manner of valuing such property. The method of valuation depends on the nature of the property interest involved, and the court must look at the realities of the situation and avoid an unrealistic valuation. The Divorce Code, 23 Pa.S. § 102 states that it is the policy of the Commonwealth to "[e]ffectuate economic justice between parties who are divorced ... and insure a fair and just determination and settlement of their property rights."

The court below correctly points out at slip opinion page 2 that the partnership agreement is not determinative in placing a value on Mr. McCabe's partnership interest:

The [partnership] agreement provides for only three situations; a) withdrawal with 90 days notice, b) withdrawal without 90 days notice and c) death. None of these situations are relevant to the instant action. Our concern is with the equitable distribution of marital property and for the purposes of such distribution the marital assets must be viewed in their present form. The defendant is remaining with the firm as an ongoing concern. As

---

**1.** *In re Marriage of Morris*, Missouri Ct. of Appeals, 588 S.W.2d 39, 44 (1979) the court stated:

However, it would seem the factors mentioned in Annotation Divorce—Value of Interest in Partnership, 74 A.L.R.3d 621, 623 (1976) would be appropriate to consider in corporation stock valuation along with any other relevant factors. The annotation states assets such as capital investments, capital accounts, other fixed shares of partnership worth, accrued equity, accounts receivable, as adjusted, the value of work in progress, appreciation of tangible personalty, goodwill, cash on hand and partnership life insurance should be considered in determining the value of a partner's interest.

such, he will enjoy the benefits of a part owner far in excess of what he would enjoy if he retired, died or withdrew from the partnership.

I find no abuse of discretion by the court below and accordingly would affirm the orders in their entirety.

MONTEMURO, TAMILIA and JOHNSON, JJ., join.