575 A.2d 87

**Nelle Vastine McCABE, Appellant,**

v.

**J. Grant McCABE, III, Appellee.**

Supreme Court of Pennsylvania.

Argued April 10, 1989.

Reargued Jan. 22, 1990.

Decided May 10, 1990.

Hope C. Lefeber, for appellant.

Bancroft D. Haviland, Diana S. Donaldson, James D. Crawford, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed in part and vacated in part orders of the Court of Common Pleas of Montgomery County in a divorce case involving the appellant, Nelle Vastine McCabe, and the appellee, J. Grant McCabe, III. *McCabe v. McCabe*, 374 Pa.Super. 451, 543 A.2d 558 (1988). The Superior Court affirmed the lower court's award of alimony, alimony pendente lite, counsel fees, and expenses to Mrs. McCabe, but vacated the court's scheme for equitable distribution of marital property. It remanded for a redetermination of equitable distribution on the ground that the lower court erred in determining a value for Mr. McCabe's partnership interest in a law firm. Both parties petitioned this Court for allowance of appeal. We denied the petition of Mr. McCabe seeking review of the award of alimony, alimony pendente lite, counsel fees, and expenses. The petition of Mrs. McCabe, however, raising the issue of equitable distribution, was granted.

The parties to this case were married in 1948, and, in 1980, they separated. At the time of separation, Mr. and Mrs. McCabe were, respectively, 56 and 54 years of age. Mr. McCabe, an attorney, has been a partner in the Phila-

delphia law firm of Rawle & Henderson since 1963. He was earning approximately $150,000 per year from his law practice when marital separation occurred. He contributed substantially to the maintenance of his wife's lifestyle during the marriage. Mrs. McCabe has never been employed, but nevertheless contributed to the marriage by being supportive of her husband's work, taking care of their household, and devoting considerable time to raising their five children. Mrs. McCabe has several hundred thousand dollars worth of non-marital property, obtained through inheritance, and receives approximately $30,000 per year in income from this property and from trusts established by her father and grandfather.

The parties obtained a no-fault divorce in August of 1981 in a bifurcated proceeding, leaving economic issues pending. Hearings were held on economic issues in 1983, and in 1985 the Court of Common Pleas ordered that Mr. McCabe pay alimony in the amount of $2,500 per month for an indefinite term, as well as counsel fees and expenses totalling approximately $33,000. At the same time, equitable distribution of marital property, under 23 P.S. § 401, was ordered as follows:

To Mrs. McCabe:

| | |
|---|---|
| Personalty | $ 8,231.00 |
| Stock (including net increase) | 60,207.55 |
| Pension Plan (Mr. McCabe's) | 60,638.63 |
| Home | 140,000.00 |
| Loan | 4,500.00 |
| Boat | 12,000.00 |
| Cash | 15,500.00 |
| | $301,077.18 |

To Mr. McCabe:

| | |
|---|---|
| Law Firm Partnership Interest | $286,276.00 |
| Stamp Collection | 5,430.00 |
| Life Insurance | 1,951.00 |
| | $293,657.00 |

Both parties agree that Mr. McCabe's partnership interest in the firm of Rawle & Henderson is marital property

subject to equitable distribution, and the issue presented by this appeal is limited to whether, for purposes of such distribution, the interest was properly assigned a value of $286,276 in the foregoing distribution scheme, or whether, as the Superior Court ordered in its remand for redetermination of equitable distribution, the interest should have been valued at $18,900. The answer is dependent upon which of two alternative valuation methods is employed.

The method employed by the Superior Court utilized a formula that the Rawle & Henderson partnership agreement set forth for the purpose of computing the sum that is subject to withdrawal when a partner terminates his association with the firm. The agreement has not been significantly changed since 1963, and provides that a withdrawing partner is entitled only to his share of the capital account (minus the amount of any indebtedness to the firm) and, if 90 days notice is given, his share of undistributed profits to date.[1] At the time of marital separation Mr. McCabe had already received distributions of profits in the form of monthly draws. Hence, the value of his partnership interest was regarded by the Superior Court as the sum in his capital account, $18,900.

In contrast, the valuation method employed by the Court of Common Pleas disregarded the terms of the partnership agreement entirely and instead appraised the firm as a "going concern," attributing to Mr. McCabe his percentage ownership therein (6.3%), valued at $286,276. This method was the one advanced by an expert witness for Mrs. McCabe. Included in the "going concern" value were all of the firm's assets (equipment, books, cash, etc.), accounts receivable (minus accounts payable and an allowance for bad debts), and work-in-progress (services rendered but not yet billed). Goodwill was not included in the appraisal.[2]

1. In the event of the death of a partner the same sum is payable, though the 90 day notice requirement is waived, and a death benefit of $20,000 is also payable by the partnership.

2. The valuation of a partner's interest in a professional partnership for purposes of equitable distribution has been litigated in a number of other jurisdictions, and a variety of approaches have been followed.

We believe that the appraisal adopted by the Court of Common Pleas overstated the value that should be recognized for purposes of equitable distribution, and that the Superior Court properly remanded this case for a redetermination of the distribution award based upon a reduced value for the partnership interest, to wit, $18,900. Accordingly, we affirm.

If Mr. McCabe were able to sell, liquidate, or otherwise realize the "going concern" value assigned to his partnership interest, it would be evident that the approach followed by the Court of Common Pleas should prevail. However, it has been clearly established in this case that the "going concern" value cannot be realized in any manner. It would be unrealistic, therefore, to assign this value to the partnership interest for purposes of equitable distribution.

The partnership agreement governing the firm of Rawle & Henderson contains a number of provisions which, as is the case with many professional partnerships, renders the firm unlike many common types of business enterprises. Furthermore, Rawle & Henderson is not an entity with shares that can be traded publicly or privately. There is no market to which a partner can refer to ascertain the value of his partnership interest. Nor can the firm be sold or liquidated at the behest of a partner.[3]

The partnership agreement contains provisions which clearly and narrowly define the rights of the partners. These provisions do not allow a partner to remove from the firm a proportionate share of the accounts receivable, work-in-progress accounts, or other accounts included in the "going concern" value. Under no circumstances can a partner liquidate his share of the partnership and receive a proportionate share of the firm's total value, including its

Some have focused upon the value of a partner's interest as defined in the partnership agreement, while others have incorporated elements of "going concern" value. See generally Annot., *Evaluation of Interest in Law Firm or Medical Partnership for Purposes of Division of Property in Divorce Proceedings,* 74 A.L.R.3d 621 (1976) (survey of case law).

**3.** Under the governing agreement, approval by three-quarters of the partners is required in order to liquidate the firm.

equipment, accounts receivable, etc. Rather, as discussed supra, a partner is strictly limited to receiving his capital account, and his share of undistributed profits, in the event he wishes to liquidate his share in the firm. Further, a partner is not permitted to sell his partnership interest to another individual. Nor does a partner have a right to retire from the firm and continue to receive a share of the firm's profits. Under these circumstances, it would be inequitable to apply a "going concern" value to the partner's share.

Granted, a "going concern" value would better reflect the future income that Mr. McCabe might earn as a result of holding a partnership interest. However, future income is not marital property because it has not been acquired during the marriage. It is not, therefore, subject to equitable distribution. *Hodge v. Hodge*, 513 Pa. 264, 269, 520 A.2d 15, 17 (1986).

The substantive rights of a partner consist only of those specified in the partnership agreement, and, in appraising this bundle of rights, the agreement cannot be disregarded. Indeed, the agreement must be viewed as the preeminent factor in valuing a partner's rights. The present agreement sets forth a method for determining the realizable value of a partner's share, and the value determined in accordance with that method, $18,900, must be regarded as controlling.

It is to be recognized that partners in certain other law firms may possess greater rights upon withdrawal from their firms than do the partners at Rawle & Henderson. Some may be governed by partnership agreements that allow them to realize values corresponding to some or all of the elements that enter into the computation of a firm's value as a "going concern." Such is not, however, the case here. Certainly, where an agreement imposes strict limits on the value that can be realized by a partner, the agreement places the continuing welfare of the partnership as a whole above the interests of any particular member of the

firm.[4] This results in a true diminution in the distinguishable value of any given partner's individual interest, and it would be a fiction to appraise such an interest as though the limitations were not in effect. We conclude, therefore, that the Superior Court properly gave effect to the provisions of the Rawle & Henderson partnership agreement in appraising Mr. McCabe's interest in the firm.

Order affirmed.

LARSEN, J., files a dissenting opinion joined by McDERMOTT and PAPADAKOS, JJ.

McDERMOTT files a dissenting opinion joined by LARSEN and PAPADAKOS, JJ.

LARSEN, Justice.

I vigorously dissent.

Today, the majority effectively precludes the equitable distribution of a partner's interest in partnership assets which interest can be reached by *all* of that partner's creditors. The *only* person who now cannot reach this interest, which is usually the main asset of a marriage where a partnership interest exists, is the spouse of that partner. Thus, by contract, a spouse who holds an interest in partnership property is able to usurp the statutory laws of equitable distribution, and there will now be a stampede to tie one's assets up in a "marital exclusion partnership."

The issue presented for our consideration by this appeal is whether, for purposes of equitable distribution in a divorce action, the value of a partner's interest in a professional partnership includes the partner's share of the partnership capital plus the value of partnership assets and profits (including accounts receivable and the value of work in progress, less accounts payable and an allowance for bad

---

**4.** It should be noted that, inasmuch as the lifestyles of Mr. and Mrs. McCabe have been financed largely from Mr. McCabe's earnings at Rawle & Henderson, both parties have prospered from the continuing welfare of the firm. Both have therefore derived benefits from provisions in the partnership agreement which have functioned to promote the ongoing welfare of the firm.

debts) at the time of separation, where the partnership agreement restricts the interest of the partner in the partnership, for purposes of withdrawal from the partnership, to his or her share of the partnership capital and profits on hand but not yet distributed.

In 1948, appellant, Nelle Vastine McCabe, married appellee, J. Grant McCabe, III, when the two were students at the University of Pennsylvania. Appellant was an undergraduate student majoring in English literature, and appellee was a law student. After they received their respective degrees and appellee served in the United States Navy during the Korean War, the couple made their home in Wynnewood, Pennsylvania, where appellant raised their five children while appellee immersed himself in his career.[1] In July of 1980, when the couple separated, appellant was 54 years old and appellee was 56 years old. Appellee is a senior partner in a Philadelphia law firm and was earning nearly $150,000 a year at the time of the separation which preceded the within action. Although appellant never worked outside the home, she inherited substantial sums from her mother's and grandmother's estates and receives approximately $30,000 per year in income from her invest-

1. Although appellee characterizes his wife as "non-working," Brief for Appellee at 6, appellant was solely responsible for the care of their children and household, thus enabling appellee to pursue his career with single-minded devotion. The extent of appellant's full-time (and over-time) domestic duties can be summarized in the following way. Appellant was pregnant for nearly four years out of the first fourteen years of the marriage; provided night feedings for a total of one to two years in that same time span; changed diapers for the equivalent of ten years; did at least three loads of laundry a day for as long as all the children lived at home; purchased groceries, cooked for the family, and kept the house orderly for thirty-three years; chauffeured her husband to the train station during the many years that they owned only one automobile; cared for the children during illnesses; chauffeured the children to school, after school activities, and appointments; attended the children's activities; hosted her husband's clients, colleagues, and friends and the children's friends; attended business functions with her husband; and attempted to engage in social activities that were enjoyable to her husband or would enhance his career. It would be more appropriate under these circumstances to characterize appellant as a working spouse who did not receive a paycheck in her name for her services.

ments and from the trusts, established by her father and grandfather, of which she is an income beneficiary.

In January of 1981, appellant filed an action in divorce against appellee in the Court of Common Pleas of Montgomery County. The parties agreed to a bifurcated proceeding and to a no-fault divorce, which was granted on August 31, 1981, leaving the economic issues pending. Hearings were held before the trial court in 1983, to resolve the outstanding claims for equitable distribution, alimony, alimony pendente lite and counsel fees. The trial court adopted the valuation of appellee's interest in his partnership made by appellant's expert, which valuation included the value of appellee's share of the partnership capital, accounts receivable, the value of work in progress, and assets, less accounts payable and an allowance for bad debts and unbillable services. The trial court assigned the value of $286,276.00 to appellee's partnership interest and divided the marital property accordingly. The trial court also awarded indefinite alimony and counsel fees and expenses to appellant.

Appellee filed an appeal to Superior Court, and a divided panel of that court affirmed the order of the trial court with respect to alimony, alimony pendente lite, and counsel fees and expenses. Superior Court reversed as to the order of equitable distribution, finding that the trial court had erred in placing a value of $286,276.00 on appellee's interest in the partnership. The case was remanded for the trial court to assign the value of $18,900.00 to appellee's partnership interest, and to redistribute the marital property accordingly. This significantly lower value represented appellee's share of the partnership capital at the time of separation as found by the trial court.[2]

2. Appellee had suggested to the trial court that, pursuant to the terms of the partnership agreement, the interest in the partnership that a partner receives upon withdrawal with 90 days' notice would be the most appropriate method to calculate appellee's interest in the partnership for purposes of equitable distribution. This value consists of a partner's share of the partnership capital and his share of the net profits received by the partnership as of the last day of the month prior to the date of withdrawal. Appellee further contended that his

Superior Court, in limiting the value of appellee's interest in the partnership to $18,900.00, was assuming that appellee had withdrawn from the partnership with 90 days' notice on the date of separation and that he had already received his share of the partnership profits. Appellant petitioned for reargument, and a divided en banc panel of Superior Court again affirmed the trial court's order regarding alimony, alimony pendente lite, and counsel fees and expenses, and vacated and remanded the matter with respect to the trial court's order for equitable distribution. *McCabe v. McCabe*, 374 Pa.Super. 451, 543 A.2d 558 (1988). Both parties petitioned this Court for allowance of appeal. We denied the petition of appellee relating to the issues of alimony, alimony pendente lite, and counsel fees and expenses, and we granted the petition of appellant with respect to the issues relating to equitable distribution.

Trial courts are given "wide discretion in fashioning an award of equitable distribution." *Hovis v. Hovis*, 518 Pa. 137, 141, 541 A.2d 1378, 1379 (1988). An appellate court may only reverse the decision of the trial court for an abuse of that discretion. *Id.* Appellant alleges that Superior Court erred in finding that the trial court abused its discretion in distributing the marital assets by not placing a value on appellee's interest in his partnership in accordance with the partnership agreement, which set forth the value of appellee's interest in his professional partnership for purposes of withdrawal or death. Appellee does not dispute the fact that his interest in the partnership is marital property and is, therefore, properly subject to equitable distribution.

The partnership agreement at issue herein provides for the distribution of certain sums of money to a partner who dies, withdraws from the partnership with 90 days' notice, or withdraws without 90 days' notice. The personal representative of the partner who dies receives the balance of the

share of the net profits should not be used to calculate the value of his partnership interest because he had already received these profits as income and this income was used to determine the amount of support and to pay support to appellant.

partner's share of the net profits received by the partnership at the date of death, the partner's interest in the capital of the partnership, less any indebtedness that he may owe to the partnership, and the sum of $20,000.00. The partner who withdraws from the partnership with 90 days' notice receives his share of the net profits received by the partnership as of the last day of the month prior to the date of withdrawal plus his interest in the capital of the partnership, less the amount of any indebtedness that he may owe to the partnership. The partner who withdraws from the partnership without 90 days' notice receives his interest in the capital of the partnership, less the amount of any indebtedness he may owe to the partnership, and may retain any draws or distributions which were received prior to the effective date of withdrawal.

The partnership agreement does not provide a true indication of the actual value of the partnership as an ongoing economic entity in that the agreement does not calculate the interest of a partner in the partnership on the basis of the value of *all* the partnership assets, which are comprised of such items as the partnership capital, accounts receivable, the value of work in progress, goodwill, and personal and real property owned by the partnership. It is clear that the partnership agreement is restrictive in the provision it makes for partners who withdraw from the partnership in order to discourage partners from leaving the partnership.

Superior Court herein determined that because appellee "cannot *realize* the value assigned for his partnership interest by [appellant's] expert," it is inequitable to consider the value of his share of the accounts receivable and the value of work in progress as marital property. *McCabe v. McCabe, supra* 374 Pa.Super. at 456, 543 A.2d at 560 (emphasis added).

The valuation of appellee's interest in the partnership that was calculated by appellant's expert witness was based upon the "going concern" principle of accounting. This principle accounts for every asset necessary for the continuing existence of the partnership. Appellant's expert, determining that the partnership agreement was not applicable

to a valuation of the partnership for purposes of equitable distribution, accounted for *all* the assets and liabilities of the partnership, with the exception of goodwill.[3] In this way, there was no need to speculate or to make faulty assumptions as to when and under what circumstances appellee would eventually leave the partnership.[4]

Although it is true that appellee, upon withdrawal or death, will not receive a sum equal to the value of his interest in the partnership as a going concern, appellee, as an active partner, does own an interest in the partnership that has a value far in excess of the interest to which he is entitled upon withdrawal or death.[5] This greater interest represents what comprises the estate of an individual partner in bankruptcy[6] and what *any* judgment creditor of appellee could reach under the Uniform Partnership Act, by means of a charging order. 15 Pa.C.S.A. § 8345(a) (Purdon's Supp.1989).

**3.** Appellant's expert did not place a value on goodwill, explaining that he did not do so because this is "one asset which has been very much in controversy.... We did not feel at the time we prepared this report that good will should be considered because of reasons that are contained in my report, specifically the ethics of the legal profession...." Trial Transcript at 29–30 (Aug. 16, 1983). Because the issue is not before the Court in this case, I shall not address the propriety of including the value of goodwill when calculating the valuation of a partner's interest in a professional partnership for purposes of equitable distribution in a divorce action.

**4.** It should be noted that those partners who left appellee's partnership without 90 days' notice in the past took other partners, associates, clients and active files with them. Notes of Testimony at 34 (June 22, 1983). Thus, the partnership agreement did not have the effect of restricting withdrawing partners to their capital accounts.

**5.** Under the Uniform Partnership Act, a partner holds partnership property as a tenant in partnership and has an equal right with his partners to possess specific partnership property for partnership purposes. 15 Pa.C.S.A. § 8342(b)(1) (Purdon's Supp.1989). In addition, a partner's personal interest in the partnership is in his or her share of the "profits *and surplus.*" 15 Pa.C.S.A. § 8343 (Purdon's Supp.1989) (emphasis added).

**6.** *See, e.g., Matter of Newman,* 875 F.2d 668, 670–71 (8th Cir.1989), ("where the debtor is a member of a partnership, the debtor's interest in the partnership is included in the estate.... The nature and extent of the partnership interest is determined by state law."). In Pennsylvania, the nature and extent of the partnership interest is set forth at 15 Pa.C.S.A. § 8343. *See* note 5, *supra.*

In this Commonwealth, a debtor's family is entitled to reach assets that are exempt from attachment by a judgment creditor. *See Young v. Young*, 507 Pa. 40, 488 A.2d 264 (1985) (retirement funds and accounts, although exempt from attachment by creditors, may be attached pursuant to an order for support). Because any judgment creditor can obtain a charging order against a debtor's interest in the partnership, i.e., the partner's share of the profits and surplus, 15 Pa.C.S.A. § 8343, and any other money due or to fall due to the debtor "in respect of the partnership," 15 Pa.C.S.A. § 8345(a) (Purdon's Supp.1989), it is unconscionable to preclude a court from calculating the partner's interest in a professional partnership to the same extent for the benefit of a spouse.

Moreover, the greater interest calculated by appellant's expert accurately reflects the net worth of the partnership, and it is this net worth which constitutes the economic infrastructure that makes it possible for appellee to practice his profession and generate his income. Appellee could not continue to practice his profession in the manner to which he has become accustomed if the capital account were the only asset of the partnership. Thus, lower courts, in computing equitable distribution, should calculate partnership interests on the basis of the partnership's net worth, which includes the partner's share of partnership capital plus the value of partnership assets and profits (including accounts receivable and the value of work in progress, less accounts payable and an allowance for bad debts).[7]

By adopting the valuation of appellee's interest in the partnership established by appellant's expert, the trial court did not improperly speculate upon uncertain future events. *See Hovis v. Hovis, supra* (predictability favored over "mere surmise" in valuation and distribution of marital

---

7. The valuation of a partner's interest in a professional partnership for purposes of equitable distribution has been litigated in other jurisdictions, and the majority of our sister states follows the result set forth in this dissenting opinion. See cases collected at Annot., *Evaluation of Interest in Law Firm or Medical Partnership for Purposes of Division of Property in Divorce Proceedings*, 74 ALR3d 621 (1976).

property). Indeed, there is nothing in the record to indicate that appellee has *yet* withdrawn from the partnership.[8] I believe that the majority errs in limiting the valuation of appellee's interest in the partnership to the circumstances delineated in the partnership agreement, and I would find that the trial court did not abuse its discretion in making its award of equitable distribution.[9]

Accordingly, I would reverse the order of Superior Court and would reinstate the order of the Court of Common Pleas of Montgomery County.

McDERMOTT and PAPADAKOS, JJ., join this dissenting opinion.

McDERMOTT, Justice, dissenting.

The question here is whether appellee's partnership interest in a law firm is a reachable asset for equitable distribution. Appellee contends it is not because under the terms of his partnership agreement his interest is limited to entitlements only available upon withdrawal from the partner-

---

**8.** The majority states that the "going concern" value is simply a reflection of the future income that appellee "might earn as a result of holding a partnership interest," maj. op. at 89, and that, as future income, it is not subject to equitable distribution. However, what the majority fails to realize is that the "going concern" value is calculated as of the date of separation, and does *not* include any income that has not already been earned. The "going concern" value represents the actual value to appellee of his interest in the partnership, which property interest he will retain after equitable distribution. Just as a parcel of real estate or an item of personalty is equitably distributed to a party to foster the continued well-being of that party, so, too, it is the "going concern" value of appellee's partnership interest, rather than the "withdrawal" value set forth in the partnership agreement, that will foster his continued well-being. *See* 23 P.S. § 401(d) (factors to be considered by court in equitably dividing marital property between parties).

**9.** The Superior Court, in reaching the same conclusion that the majority of this Court now reaches, stated that it relied on *Hodge v. Hodge,* 513 Pa. 264, 520 A.2d 15 (1986). *Hodge* is inapposite to the case sub judice in that *Hodge* involved the value of a professional degree as it related to future earnings. There are no future earnings involved in the case presently before this Court. Appellant's expert placed a value solely on earnings that were already owed to the partnership, in the form of accounts receivable and work in progress, at the time of separation; the expert did not consider the value of future earnings in calculating appellee's interest in the partnership.

ship and that short of dissolution he has no larger owner-ship of its net worth. The creation of assets during marriage is considered the product of the common effort of both spouses. Appellee's efforts in creating the net worth of the partnership was therefore the effort of both husband and wife. The husband now says that effort could only be realized if the partnership is dissolved. Despite long life, everyone and everything is mutable, subject to change in person, place and condition. The partnership in question, has long prevailed, but yet must rely upon agreement to continue. It can be dissolved by its members for their own reasons and what was, upon a given day, will no longer stand. Meanwhile, what the wife contributed remains an asset of that partnership, but appellee contends it is subject to his agreement with others. The partnership's net worth has been calculated and appellee's share is known. How and why he cannot get what he helped create is from his own choice. What the wife gave to help his effort is between him and her. Appellee's agreement with others ought not deprive her of what exists from their common effort. Appellee owes to her what she helped him obtain. He used her effort to get what he has. She ought not be defeated because he encumbered it by agreement with others. I believe his calculable share is an asset for purposes of equitable distribution. I pass no judgment here upon how it should be apportioned between them.

LARSEN and PAPADAKOS, JJ., join this dissenting opinion.