626 A.2d 608

James A. NADDEO

v.

Lois J. NADDEO, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 10, 1993.

Filed June 16, 1993.

132

134

James N. Bryant, Millheim, for appellant.

Peter F. Smith, Clearfield, for appellee.

Before KELLY, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine, for purposes of equitable distribution, the proper method of valuing a partnership interest in a viable law practice. Where the partnership was voluntarily dissolved after separation but prior to distribution, we determine that the partnership interest should be valued before the voluntary dissolution of the partnership. We reverse and remand.

Lois J. Naddeo (Wife) appeals from the orders of equitable distribution and alimony following the grant of a divorce from James A. Naddeo (Husband) on February 5, 1992. The parties were married on January 28, 1966, and separated on February 28, 1991. By the time of the Master's hearing on November 4, 1991, the two children born of their marriage, John Anthony Naddeo, and Janine Allison Naddeo, had achieved majority.

Husband, admitted to practice law in Pennsylvania in 1967, had been a partner in the law firm of Belin, Belin, and Naddeo in Clearfield, Pennsylvania, from January 1, 1973, until the partnership was dissolved on October 21, 1991. He earned approximately $150,000 per year during the five years prior to the separation.

After graduating from high school in 1962, Wife was employed in a clerical position in Washington, D.C. She was employed at the time the parties married, and for a brief

period of time after the parties returned to Pennsylvania. Since that time, Wife has been a homemaker, contributing to the marriage by running the household and raising the parties' children.

The parties and their counsel stipulated to the value of all marital assets except two: the marital residence at 204 West First Street, Clearfield, Pennsylvania; and, Husband's partnership interest in the law practice. The Master conducted a hearing on November 4, 1991, to determine the values of Husband's partnership interest, the marital residence, the marital debts, and to take testimony regarding the question of Wife's alimony.

The Master, in his recommendations, divided the marital property, awarded Wife alimony, and discussed but did not ascribe any value to Husband's partnership interest in the law firm. Both parties filed exceptions to the Master's report, which the trial court dismissed after issuing the divorce decree. The trial court adopted the Master's recommendations in its equitable distribution of the marital property: Wife's share was valued at $432,600, or 58%; Husband's share was valued at $309,983, or 42%. Wife was also awarded alimony of $400 per month for four years. Both parties were deemed jointly responsible for a potential debt involving a lease agreement. Counsel fees and expenses were divided equally.

In this appeal, Wife raises three questions for our consideration. Wife claims that the trial court erred in: (1) accepting zero as the value of Husband's interest in the law partnership when her expert testified that the value, based upon the partnership agreement, was $160,000; (2) distributing the marital property, 42% to Husband, 58% to Wife, and, (3) the amount and duration of the award of alimony.

Our standard of review in matters of equitable distribution is limited. We will not reverse the trial court absent an error of law or an abuse of discretion. *Elhajj v. Elhajj*, 413 Pa.Super. 578, 605 A.2d 1268 (1992). We have stated that:

[A]n abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. Specifically, we

measure the circumstances of the case and the conclusions drawn therefrom by the trial court against the provision of 23 Pa.C.S.A. § 3502(a), and the avowed intentions of the Divorce Code, namely to "effectuate economic justice between [the] parties and insure a fair and just determination of their property rights."

*Butler v. Butler*, 423 Pa.Super. 530, 537–538, 621 A.2d 659, 663–664 (1993) (alteration in original) (citations and footnote omitted). It is in light of this standard that we will now review Wife's first and second claims.

First, Wife claims that the trial court erred in accepting a valuation of zero for Husband's interest in the law partnership when her expert testified that the value, based upon the partnership agreement, was $160,000. Following our review of the record, we conclude that the trial court erred in valuing Husband's partnership interest in the law firm at zero for purposes of equitable distribution.

A spouse's partnership interest in a law partnership is marital property subject to equitable distribution. *McCabe v. McCabe*, 525 Pa. 25, 575 A.2d 87 (1990); *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986). Where the partner does not have the ability to sell, liquidate, or otherwise realize the value assigned to his interest, the valuation of a spouse's partnership interest in a law firm is dictated by the partnership agreement. *McCabe*, 525 Pa. at 29–30, 575 A.2d at 88–89. *See also Soloman v. Soloman*, 531 Pa. 113, 124 n. 12, 611 A.2d 686, 691 n. 12 (1992).

Here, Husband was a partner in the law partnership of Belin, Belin, and Naddeo from January 1, 1973, until its dissolution on October 21, 1991. At the Master's hearing, Wife presented Patrick J. Fiore, a Certified Public Accountant, as an expert in the valuation of businesses for purposes of equitable distribution. Fiore stated that, pursuant to the partnership agreement of January 1, 1973, and particularly paragraph 6, the value of Husband's interest in the law partnership was $160,000.

Husband testified that it was his decision to terminate the partnership. Husband stated that there were no partnership clients because each partner maintained his own clients. Upon dissolution, Husband and Belin, Jr., closed the books, performed an accounting, and took their respective clients. Husband testified the final accounting revealed his capital account had a net deficit of $27,797.28, and he executed an agreement to pay Belin, Jr., that amount.

Husband denied that there were any outstanding fees and/or accounts receivable due the partnership. Husband's interpretation of the partnership agreement was that a payment to the withdrawing partner was required only if the non-withdrawing partner continued the partnership business. Husband testified that it was at his discretion, as the withdrawing partner, whether the partnership would continue after he withdrew from it, and depended upon a determination as to whether there was any value to be purchased. Husband said that the partners agreed that they had nothing to sell to each other.

In his recommendation for equitable distribution to the trial court, the Master failed to ascribe any value to Husband's partnership interest in the law firm. Both parties took exceptions to the Master's recommendations. Following argument on the exceptions, the trial court dismissed all exceptions and adopted the Master's recommendations. *See* Order on Exceptions to Master's Report and Decree Distributing Marital Assets, July 2, 1992, Snyder, S.J.

In its memorandum opinion, dated July 2, 1992, the trial court agreed with the Master that the value of Husband's partnership interest was zero for purposes of equitable distribution. The trial court found that the value Wife's expert had placed upon Husband's interest in the partnership depended upon Husband withdrawing from an ongoing partnership with accounts receivable and work in progress, a partnership having value as a going concern. The trial court held that the partnership had dissolved with no accounts receivable and work in progress because Husband and his partner each took

138

his own clients with him. *See* trial court opinion, July 2, 1992, Snyder, S.J., at 2–3.

Having reviewed the record, we conclude that the trial court erred in valuing Husband's partnership interest in the law firm by: (1) determining the value after the dissolution and termination of the partnership; and, (2) using an improper valuation method.

In *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988), our supreme court discussed the time for valuation of marital assets. Though they stated a preference for valuation at or near the time of distribution, they noted that:

> [T]here may be situations where marital assets have been consumed or disposed of by one of the parties, thus rendering a current valuation impossible and making it necessary to rely on data that would otherwise be considered stale . . .

*Id.* at 382–383, 543 A.2d at 536. *Also see Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986).

Here, the situation is similar to those in *Barnhart v. Barnhart*, 343 Pa.Super. 234, 494 A.2d 443 (1985), and *Butler, supra*. In *Barnhart* the husband withdrew his pension, which was acquired during the marriage and prior to separation, to pay debts and expenses. Husband argued that no pension existed at the time the divorce complaint was filed. The pension was excluded from the marital property by the trial court. We reversed, finding that to allow a spouse to deplete a marital asset after separation but before the divorce would defeat the purpose and spirit of equitable distribution. *See* 23 Pa.C.S. § 3502.

In *Butler, supra*, when the parties separated, husband was one of two partners in an accounting firm. However, by the time of the Master's hearing, the accounting firm had acquired an additional partner, thus reducing husband's partnership interest from one-half to one-third. This Court held that the equitable distribution must be based on husband's one-half partnership interest, not his one-third interest at the time of the Master's hearing. *Butler*, 423 Pa.Super. at 538–540, 621 A.2d at 664.

■ In the present case, the partnership interest was acquired during the marriage and prior to separation. The firm was a viable partnership at the time the parties separated. Husband's distributive share of the partnership's net income had averaged $150,000 per year for the previous five years. The partnership's gross income was $547,308.08 from January 1, 1991, through October 28, 1991 (yielding a net income of $200,746), as indicated in the partnership's 1991 income statement. The dissolution of the partnership occurred 14 days before the Master's hearing. Although Husband voluntarily withdrew from the partnership, he continued to work the same work schedule and amount of hours in his subsequent private practice as he did while a partner.

Based upon these facts, we conclude that the appropriate time for Husband's partnership interest to be valued is before his voluntary withdrawal from the partnership. This date more accurately reflects the value of this marital property for purposes of equitable distribution. *Barnhart, supra; Butler, supra.* Permitting the trial court's conclusion to stand would allow Husband to destroy the value of marital property, i.e., the partnership, simply through his voluntary dissolution of the partnership. We will not allow a spouse to so easily defeat the purposes of equitable distribution. *Barnhart, supra.*

■ We also observe that the trial court concluded that it could not apply the provisions of the partnership agreement to ascertain the value of Husband's interest in the firm because the partnership was not a large, ongoing law firm with accounts receivable, work in progress, and value as a going concern. In *Buckl v. Buckl,* 373 Pa.Super. 521, 542 A.2d 65 (1988) (*en banc* ), we established that a partnership interest is marital property. *See also McCabe, supra.* While we recognize the possible difficulty of placing a value on a spouse's interest in a small business such as a partnership, we have also stated that the form of the partnership is not dispositive. *Buckl, supra; Butler, supra.* The trial court must initially consider the partnership agreement, "although it is most unlikely that the agreement will deal with valuation of a partner's interest vis a vis equitable distribution upon dissolu-

tion of the marital relationship." *Buckl* at 532, 542 A.2d at 70. The *Buckl* court noted that partnership agreements usually deal with valuation "upon the voluntary withdrawal, death of a partner, or dissolution of the firm." *Id.* Not only is the partnership agreement a factor to be considered, but the trial court must also look at the realities of the situation and avoid an unrealistic valuation. *Butler, supra.* In setting forth the other factors which must be considered, we said:

> Generally speaking the monetary worth of this type of professional partnership will consist of the total value of the partners' capital accounts, accounts receivable, the value of work in progress, any appreciation in the true worth of tangible personalty over and above book value, together with good will, should there in fact be any; the total so arrived at to be diminished by the amount of accounts payable as well as any other liabilities not reflected on the partnership books.

*Buckl* at 532, 542 A.2d at 70 (citation omitted); *see also Butler, supra.*

While the partnership agreement in this case does not address the value of a partner's interests for purposes of equitable distribution, it provides for a partner who dies or withdraws from the partnership to receive his proportionate share of the proceeds of the firm. *See* Partnership Agreement, ¶ 6. Provision is also made for a partner who withdraws or dies to receive an additional amount for the **unfinished business** of the partnership. *Id.* Unfinished business is specifically defined as "business, the proceeds of which, have not been received regardless of how far the work has progressed and regardless of the state of the billing." *Id.*

The partner who dies or withdraws will essentially receive a proportionate share of the firm's total value, including the partnership's unfinished business. Partnership Agreement, ¶¶ 6–8. Thus, any one of the three partners in Husband's partnership could realize his share of the going concern value of the partnership upon withdrawal, unlike the situation in *McCabe,* where the partner of a large law firm could not

realize the going concern value of his partnership interest. There, our supreme court determined that it would be inequitable to apply a going concern value to the husband's partnership interest in a law firm where the going concern value could never materialize. The supreme court commented that the husband's share could not be publicly or privately traded, the firm could not be liquidated or sold at a partner's discretion, and the partner could not:

remove from the firm a proportionate share of the accounts receivable, work-in-progress accounts, or other accounts included in the "going concern" value. Under no circumstances can a partner liquidate his share of the partnership and receive a proportionate share of the firm's total value, including its equipment, accounts receivable, etc. Rather . . . a partner is strictly limited to receiving his capital account, and his share of undistributed profits, in the event he wishes to liquidate his share in the firm.

*McCabe*, 525 Pa. at 29–30, 575 A.2d at 89. However, where the partnership agreement grants to the partners withdrawal rights permitting the partner to realize a value corresponding to the value the partner would receive if the partnership was valued as a going concern, it is appropriate for the court to value the partnership interest as a going concern. *Id.* at 30, 575 A.2d at 89. From *McCabe*, it follows that in this case the valuation of Husband's partnership interest is governed by the partnership agreement, applying a going concern value. *Id.*

The trial court held that it could not apply the provisions of the partnership agreement to ascertain the value of Husband's interest in the firm because the firm was not a large, ongoing concern with accounts receivable, work in progress, and value as a going concern. The trial court supported this conclusion by finding that: (1) the firm had no clients because each lawyer had his own clients; (2) income generated by each attorney's clients went into a common fund for the payment of partnership expenses, after which the remainder was divided and distributed to each attorney; and, (3) after the partnership dissolved, each partner took his clients with him. Thus, the trial court found that no entity remained which could

receive the benefit of any accounts receivable or work in progress.

The trial court ignored the provisions of the partnership agreement in making these determinations. Husband's claim that the partnership did not have any clients is belied by the partnership agreement. Partnership Agreement, ¶ 3. Husband and the other partners agreed in 1971 that their individual law practices would cease and their clients would become an asset of the partnership. In return, each partner received a share of the partnership's distributions. At dissolution, the clients were an asset of the partnership, not the individual partners.

We do not dispute the fact that the partners were within their rights to divide the partnership's clients after dissolution. *See Beasley,* 359 Pa.Super. at 35, 518 A.2d at 552. According to the partnership agreement, the individual partners did not, and could not, retain clients separate from the partnership. Therefore, the unfinished business proceeds of all clients, i.e., the accounts receivable and work in progress as defined in the partnership agreement, except for contingent-fee cases, is a partnership asset that must be considered for purposes of valuation. *Id.* at 39, 518 A.2d at 554. There is no evidence that the partners, in suddenly dissolving a viable law practice with a gross income of $547,308.08 from January 1, 1991, through October 28, 1991, and an average monthly income of $54,730.81, attempted to determine what unfinished business proceeds attributable to the partnership existed. Though the partners may have chosen to ignore the unfinished business proceeds in dividing the partnership's clients between them, it does not preclude the trial court from making an independent determination as to the value of the unfinished business. While a Master's report is entitled to great consideration by the trial court, it is not binding upon it. *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 349, 516 A.2d 10, 15 (1986) (citations omitted).

We conclude that the trial court erred in determining that the partnership agreement could not be used for valua-

tion purposes because the partnership agreement was predicated upon the continuation of the partnership, and that there was no unfinished business proceeds due the partnership. Were we to accept the trial court's logic, the value of a partner's interest in a small partnership, for purposes of equitable distribution, could never be determined. The going concern method would not be applied since the partnership has dissolved and terminated without a surviving entity; the partnership agreement would not be applied because its method of valuation is that used for valuing a going concern. We reject the notion that neither method of valuation can be used for purposes of equitable distribution. *Cf. Barnhart, supra.*

We conclude that the trial court should value Husband's partnership interest in the law firm before the dissolution and termination of the partnership. Since Husband could liquidate his interest in the law firm, the valuation must be determined by the partnership agreement, in accordance with *McCabe.* While we conclude that the trial court erred in accepting a value of zero for Husband's interest in his law partnership, we reach no conclusion as to an appropriate value, nor do we determine whether the valuation offered by Wife's expert is correct.

We find it unnecessary to address Wife's remaining claims, because the equitable distribution and alimony must be recalculated after re-valuing Husband's partnership interest.

Accordingly, for the foregoing reasons, we reverse and remand for proceedings not inconsistent with this Opinion. Jurisdiction relinquished.

HESTER, J., filed a concurring statement.

HESTER, Judge, concurring.

I concur in every respect with Judge Johnson's well reasoned adjudication. I write separately only to express dissatisfaction with the wife's alimony award of $4,800.00 per year for four years. This is totally inadequate. For twenty-five years she made substantial contributions to the marriage and the family as wife, mother and homemaker. For many years

144

prior to the separation, the family income averaged in excess of $150,000.00. A comfortable life style was attained. The alimony should be sufficient to enable the wife to maintain a similar life style as well as to prepare herself for re-entry into the business world; not an easy undertaking.