583 A.2d 485

**Edward KRAKOVSKY, Appellant,**

v.

**Bernadette KRAKOVSKY, Appellee.**

Superior Court of Pennsylvania.

Argued June 5, 1990.

Filed Dec. 7, 1990.

Mark Clement, Pittsburgh, for appellant.

Sanford A. Middleman, Pittsburgh, for appellee.

Before KELLY, HUDOCK and MONTGOMERY, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether the trial court was correct in retroactively converting an

unallocated spousal and child support order that was continued after the entry of the divorce decree in a bifurcated proceeding into an order for alimony *pendente lite* and using the arrearage on the unpaid alimony *pendente lite* as a replacement for alimony when making its determination of equitable distribution of the marital assets. We find this retroactive conversion of the unallocated spousal and child support into an order for alimony *pendente lite* and the use of the arrearage on the order as a replacement for alimony to be improper; therefore, we vacate the order granting equitable distribution.

The relevant facts and complicated procedural history of this case are as follows. The parties were married in 1953 and had three children. The husband was the sole wage earner throughout the time period the couple resided together. The couple owned a home as tenants by the entirety. The parties separated in 1975, at which time an order was entered requiring the husband to pay $300 a month in support for the appellee and two minor children, Edward (D.O.B. 6/16/61) and James (D.O.B. 6/29/64). The couple reconciled briefly in 1976. The order was lifted; however, they separated again and the support order was reinstated. The support order was modified in January, 1980 to $290.00 when Edward Krakovsky attained the age of majority. The parties were divorced on February 2, 1981, in a bifurcated proceeding; however, the court ordered the support order to remain in force pending the outcome of the property settlement.

Shortly thereafter, inventories and appraisals of the marital property were filed with the court and a conciliation was ordered; but the conciliation which was scheduled for July 21, 1981, never took place. On March 17, 1982, shortly before the youngest child, James, reached the age of majority, the appellant, without leave of court, stopped making support payments to the appellee. No petition for modification was ever filed by the appellant, nor did the appellee ever initiate contempt proceedings.

Almost seven years later, on February 23, 1988, the appellee filed a praecipe for conciliation at which time a hearing was scheduled for March 30, 1988, before the trial court. The conciliation took place as scheduled, however, neither party was ready to proceed. The trial court rescheduled the conciliation to June 30, 1988, with the proviso that both parties be prepared to discuss their present economic circumstances and the extent and value of the marital property in the hopes of affectuating a settlement. At the conciliation, the appellant presented in open court a motion to cancel and strike arrearages. As a result of this motion, the trial court ordered that matters presented in the motion be reviewed by a hearing officer with all exceptions to be argued before the court.

On September 15, 1988, the hearing was conducted before a hearing officer in which she found that the January 1980 support order was actually an order for alimony *pendente lite* and that a support arrearage of $17,535 existed in the appellee's favor. The hearing officer arrived at the arrearage figure by taking the total arrearage from the date the appellant stopped paying on the January 1980 support order and subtracting what she deemed to be the appellant's child support obligation, which should have ended June 29, 1982, the date James Krakovsky reached the age of majority. She also ruled that appellant was not responsible for alimony *pendente lite* in 1985 because he was unemployed most of that year. The hearing officer recommended that the appellant be ordered to pay $200 a month in alimony *pendente lite* and $100 a month for the arrears. A temporary order was entered implementing the hearing officer's recommendations. The appellant filed exceptions to the temporary order. The trial court then modified the order and halted the payment of alimony *pendente lite* and held payment on any arrears in abeyance for disposition incident to equitable distribution.

On April 5, 1989, following a hearing in which the trial court considered, *inter alia*, the parties' income, health, and standard of living, the trial court entered a *decree nisi*

awarding the appellee the marital home, and $1500.00 in counsel fees; the appellant was awarded exclusive rights to his pension from a previous employer. The trial court then adopted the hearing officer's recommendation that the arrearage was $17,535.00 and ordered that the appellant pay the appellee $150.00 a month until the arrearage is extinguished. Exceptions to the *decree nisi* were filed by the appellant. The exceptions were dismissed and the *decree nisi* became a final order.[1] This timely appeal followed.

On appeal, the appellant raises the following issues:

1. Did the trial court err and abuse its discretion when it awarded alimony or alimony pendente lite, counsel fees, and the former marital residence to Appellee, without reduction for one half of the fair rental value of the property from the date when Appellee began sole occupancy of the former marital residence, and without reduction for depreciation of the former marital residence caused by the Appellee's poor maintenance thereof from the date when Appellee began sole occupancy of the former marital residence?

2. Did the trial court err and abuse its discretion when it awarded alimony pendente lite or alimony and counsel fees to Appellee based solely upon a comparison of each party's income in 1982, 1983, 1984, 1985, 1986, and 1987 instead of using each party's income less ex-

---

1. The normal procedure for handling exceptions from a master's report is specified in Pa.R.C.P. 1920.55. The rule dictates that when exceptions are filed to a master's report, the court shall hear argument and enter the appropriate final decree from which no motions for post-trial relief may be filed. However, instantly, the trial court scheduled a further hearing on issue of arrearages when it dismissed the appellant's exceptions to the master's report; thus, for the purposes of this appeal, the April 5, 1989 hearing will be deemed a "hearing *de novo*" from which exceptions may be taken. Moreover, we note that the trial court's use of a *decree nisi* in a domestic relations case was improper; however, as the effect of the trial court's denial of the exceptions from the *decree nisi* is the same as the entry of an order by the trial court and the subsequent filing and denial of post-trial motions, we will not elevate form over substance and will allow the appeal. However, in the future, caution should be taken to avoid following the rules of equity when there are specific rules governing domestic relations cases.

penses, when there was no record of need established by Appellee at any time?

3. Did the trial court err and abuse its discretion when it awarded alimony pendente lite or alimony and counsel fees to Appellee when Appellee had failed to pursue the matter to the detriment of Appellant?

4. Did the trial court err and abuse its discretion when it awarded alimony and alimony pendente lite to Appellee retroactively, based upon the way that the trial court would have interpreted the record in 1982, instead of the date of hearing.

(Appellant's Brief at 4).

■ Upon review of the issues raised by the appellant, we have concluded that the order setting forth equitable distribution must be vacated. Although we find no merit with regard to the issues concerning the valuation and distribution of the marital property and affirm on the basis of the trial court's opinion as to these issues, the trial court's decision retroactively changing a support order into an order for alimony *pendente lite* requires that the entire award be vacated.

The characterization by the trial court of the arrearage on the support order as alimony *pendente lite* has proven troublesome. When the trial court granted the divorce decree in bifurcated proceedings on February 2, 1981, it stated in the decree that the January 1980 modified unallocated order was to remain in effect. Shortly before the youngest child's eighteenth birthday, the appellant ceased making payments on the order.

In the seven years that passed, *neither* party made any effort to either enforce or terminate the support order or to bring about the distribution of the marital property. Finally, the appellee praeciped the trial court for the long awaited conciliation. Due to *both* parties inaction, the trial court was then forced to deal with not only the economic issues that were unresolved when the divorce decree was entered, but was also confronted with determining the validity of the unallocated support order and the arrearages on that order.

The trial court also faced the issue of what effect the depreciation of the marital residence should have on equitable distribution.

The trial court attempted to resolve these difficulties by sending the case to a hearing officer. The hearing officer determined that the trial court's continuation of the January 1980 modified support order in the February 2, 1981 divorce decree was actually intended to be an order for alimony *pendente lite* even though the words alimony *pendente lite* are nowhere to be found in the divorce decree.[2] The hearing officer then subtracted what she deemed to be child support from the unallocated support order, and made an adjustment for time period that the appellant was unemployed to reach an arrearage figure of $17,535. At the equitable distribution hearing, the trial court accepted the hearing officer's interpretation that the continuation of the January 1980 support order in the divorce decree was actually intended as an order for alimony *pendente lite*. The trial court also accepted the hearing officer's figure as to the amount of arrearage and used both determinations in rendering its decision in the equitable distribution proceeding. We find the trial court's retroactive changing of a support order to an alimony *pendente lite* order to have been in error.

The purpose of an order of spousal support is to assure a reasonable living allowance to the party requiring support. The duty to provide spousal support is concomitant with the marital relationship, and terminates with the ending of the marriage. *Fexa v. Fexa,* 396 Pa.Super. 481, 578 A.2d 1314 (1990). Alimony *pendente lite,* on the other

2. On March 20, 1987, administrative order No. F.D. 87002867 was issued. This order states, "any existing spousal support order shall hereafter be deemed an order for alimony *pendente lite.*" We seriously question the validity of such an order in light of this Court's decisions in *Levine v. Levine,* 360 Pa.Super. 297, 520 A.2d 466 (1987) and *Purdue v. Purdue,* 398 Pa.Super. 228, 580 A.2d 1146 (1990), which held that orders for spousal support and alimony *pendente lite* are not automatically interchangeable. However, as neither the parties in their briefs, nor the trial court in its opinion, make any reference to the order, we are precluded from addressing its validity here.

hand, is awarded to sustain the dependent spouse on a basis of equality with the other spouse while maintaining or defending the divorce action. *McNulty v. McNulty*, 347 Pa.Super. 363, 500 A.2d 876 (1985). This Court has long recognized that an award of spousal support is separate and distinct from an award of alimony *pendente lite*. *Levine v. Levine*, 360 Pa.Super. 297, 520 A.2d 466 (1987).

In a bifurcated divorce, as we have instantly, spousal support should terminate with the entry of the divorce decree. Alimony *pendente lite* may be awarded at a party's request for the period between the entry of divorce and the adjudication of the economic aspects of the marriage in order to maintain an equality between the former spouses in resolving their differences. *Id.*, 360 Pa.Superior Ct. at 302, 520 A.2d at 467. An order for spousal support may be converted into alimony *pendente lite* upon application, *see Desch v. Desch*, 329 Pa.Super. 22, 477 A.2d 883 (1983); however, instantly we have no record of either party making such an application during the time period while equitable distribution was pending.

The appellee, relying upon *Desch v. Desch, supra,* contends that the trial court's decision to convert retroactively an unallocated support order into alimony *pendente lite* by subtracting out what it deemed to be child support was proper. The appellee argues that the conversion of a pre-existing support order into an order for alimony *pendente lite* was merely a change of form and not of substance and occurs automatically. However, *Levine v. Levine, supra,* instructs otherwise.

In *Levine,* this Court was asked to examine a support order which continued despite the entry of a divorce decree. The Court stated that while an order of spousal support may properly be converted into an order of alimony *pendente lite* by the trial court, such a conversion is not automatic and an application must be made before a conversion can take place. The Court commented upon the different purposes to be served by each order and recognized that the circumstances of the parties are subject to change through

each of the steps of the dissolution of a marriage and accompanying property settlement. *Purdue v. Purdue*, 398 Pa.Super. 228, 580 A.2d 1146 (1990), *citing Levine, supra*, 360 Pa.Superior Ct. at 302, 520 A.2d at 468. In its reversal of the trial court's order, the Court stated that the trial court must consequently consider these changes in deciding whether to terminate the award, grant a new form of award, or change the amount of award.

In the instant case, the trial court stated on the record that had it considered the matter in timely fashion, it would have ordered the appellant to pay alimony due to the disparity in the parties' income. However, the case was not considered in a timely fashion. The court, therefore, retroactively converted a support order, which should have ended with the entry of the divorce decree, into an alimony *pendente lite* order and held appellant responsible for the arrearage on the retroactive order of alimony *pendente lite*, in lieu of alimony. We find this course of action to have been in error.

As stated earlier, the purpose of alimony *pendente lite* is to assist the disadvantaged party to maintain or defend the litigation until all the economic issues are resolved. In the instant case, the trial court has attempted to use the support order, which should have ended with the entry of a divorce decree, as its basis for granting retroactive alimony *pendente lite* and then used the arrearage on this improperly converted order as a replacement for the alimony it would have granted had equitable distribution occurred in a timely fashion. This course of action is clearly an abuse of discretion, as it fails to account for the distinctly separate purposes that spousal support and alimony *pendente lite* serve. Because as the original purpose of the January 1980 modified support order ended with the entry of the divorce decree on February 2, 1981, we can find no useful purpose for bending and torturing the January 1980 modified order, in order to have it serve purposes it was never intended to serve. Thus, we find the trial court erred in its retroactive conversion of the January 1980 support order to alimony

*pendente lite* and its use of the arrearages on that order as a replacement for alimony.

In light of our determination that the trial court erred in its attempt to make the January 1980 modified support order serve three entirely separate purposes, spousal support, alimony *pendente lite,* and alimony replacement, we conclude that a remand is in order. As the trial court's ultimate decision on the issues of alimony *pendente lite* and alimony may cause a change in the economic positions of the parties and the original scheme of the trial court's disposition, we vacate the order of equitable distribution so that the trial court can be in a position to reconsider its equitable distribution award in order to achieve economic justice.

Order vacated and remanded. Jurisdiction relinquished.