621 A.2d 659

Carol E. BUTLER, Appellee,

v.

Leon I. BUTLER, Appellant.

Carol E. BUTLER, Appellant,

v.

Leon I. BUTLER, Appellee.

Superior Court of Pennsylvania.

Argued June 3, 1992.

Filed March 2, 1993.

532

Rebecca N. Tortorici, York, for Carol Butler.

Andrew B. Brown, York, for Leon Butler.

Before MONTEMURO,[1] KELLY and CERCONE, JJ.

KELLY, Judge:

In this opinion, we are called upon to determine whether the trial court committed error by apportioning the marital assets, including an accounting firm in which the husband is a shareholder, by their value on the hearing date instead of their value on the separation date when the husband's ownership interest in the accounting firm decreased from a one-half interest at the time of separation to a one-third interest on the hearing date. In addition, we are called upon to determine whether the trial court properly ascribed the going concern value to the husband's shares in the accounting firm rather than valuing them in accordance to the accounting firm's shareholders buy-sell agreement. For the reasons that follow, we vacate the order of equitable distribution and remand for a re-determination consistent with the principles stated herein.

The relevant facts and procedural history of this case are as follows. Carol Butler and Leon Butler were married on May 10, 1964. In the early years of their marriage, the wife worked as a school teacher, but later stayed at home to care for the parties' three children. In 1980, the wife re-entered

1. Although Judge Montemuro participated in the initial decision rendered in this case, reconsideration of that decision was subsequently granted by the two remaining panel members after Justice Montemuro's ascension to the Pennsylvania Supreme Court. Thus, Justice Montemuro did not participate in the reconsideration of this case.

the job market as a retail sales clerk and briefly owned a gift shop. Leon Butler is employed as a partner in a certified public accounting firm.

In May of 1983, after nineteen years of marriage, the parties separated. A brief reconciliation from May to December 1984 ended when the parties finally separated. The wife remained in the marital residence with the couple's children. When the parties were divorced by a decree entered on April 12, 1988, the issue of equitable distribution of the marital property remained unresolved.

A court-appointed master held hearings and received evidence on matters related to equitable distribution, alimony pendente lite, alimony, counsel fees, and costs. The interim master's report of December 11, 1988 recommended that the wife receive $400.00 per week of alimony pendente lite, retroactive to May 1, 1988.

Evidence presented before the master showed that at the time of the parties separation, the husband was a fifty percent owner in the certified public accounting firm of Einhorn, Butler and Gingerich. In 1986, the firm acquired an additional partner, reducing the husband's interest in the firm to one-third. According to the wife's expert, the firm had a value of $546,889.00. The husband asserted that the value of his interest in the firm was actually $2,450.00, the sale price of the husband's shares, as determined in the buy/sell agreement.

The master also heard evidence that the wife was working in retail sales and earning a gross monthly salary of $1,008.42 per month. The wife introduced evidence that her monthly expenses amounted to $4,237.00. The wife testified that monetary advancement would require an additional six to seven years of work experience. At the time of the hearing, the parties' youngest child was still living in the marital residence with the wife, and the elder children, who were away at college, would return to the marital residence during their school vacations.

From the time of final separation in December of 1984 until October of 1988, the husband maintained the marital residence

and paid child support. During this time, the husband made the monthly mortgage payments, as well as repair bills, insurance, utilities, and other costs associated with the maintenance of the marital residence.

The master determined that the total value of the marital assets was $444,419.25 and recommended that the wife receive fifty-five percent of the value of the marital assets. The master determined that the following were marital assets retained by the husband:

1. 200 East Market Street ..................... $107,092.99
2. 1⅛ interest in Einhorn, Butler and Gingerich ..... 141,148.16
3. Stocks as follows

| | | |
|---|---|---:|
| | 140 shares W.L. Morgan | 1,558.00 |
| | 761.86 shares Mellon Bank | 20,379.00 |
| | 44 shares Figgie | 1,903.00 |
| | 75 shares William Home Products | 3,023.00 |

4. Dividends on stocks ........................... 8,456.00
5. O.K. Corral ................................. 10,000.00
6. Life insurance ............................... 5,210.00
7. Automobiles
 Mercedes
 Aztec ...................................... 22,500.00
8. Husband's pension ........................... 7,800.00
9. Grandfather clock ........................... 10,000.00
10. Bank accounts
 Community National ........................... 44.46
 York Federal ................................ 250.00
 York Bank and Trust ......................... 60.00
11. B.E.G. Associates ............................. 0.00
12. Cash Management Account .................... $25,120.72

Total .................. $364,545.33

Husband to pay the loan he made to fund "All Tied Up" ......................................... 16,000.00
and to pay the Einhorn Est. ...................... 141,791.67
and to pay his loan from
Sheldon Lipsity .................................. 6,765.00

Total ....................... $199.988.66

The master also recommended that the husband should take the office building subject to the encumbrance in favor of the York Bank. In addition, the master determined that the wife ought to retain the following marital assets:

| 1. | 60 Tyler Run Road | $154,035.25 |
|----|-------------------|-------------|
| 2. | Fixtures, furniture, silverware, chattels at 60 Tyler Run Road (not including the grandfather clock) | 20,000.00 |
| 3. | Jewelry | 13,000.00 |
| 4. | Renault automobile | 4,500.00 |
| 5. | 551.38 shares Continental Bank | 21,986.06 |
| 6. | 222 shares Drovers Bank Corporation | 8,880.00 |
| 7. | Cash—Cash Management account | 32,514.28 |
| 8. | Stock dividends | 2,272.00 |
| 9. | Life Insurance (Penn. National) | 1,000.00 |
| | Total | $258,187.59 |
| | Wife to pay Dauphin Deposit Loan | 13,757.00 |
| | Total | $244,430.59 |

The master also recommended that the wife take the marital residence subject to a mortgage and that she pay a $1,000.00 credit card debt. Master's Report of 5/12/88 at 25–27.

After determining that the fair rental value of the marital home was $1,500.00 per month, the master recommended that the husband receive a credit for one half of the fair rental value for the period of May, 1983 until November, 1988, when the wife occupied the home rent-free. In addition, the master further recommended that the wife receive $300.00 per week in alimony. Finally, the master determined that the wife should be awarded counsel fees of $7,500.00 and expenses of $1,750.00. Both the wife and husband filed exceptions to the master's report.

On October 2, 1991, the trial court issued its opinion and order affirming most of the master's recommendations, thereby dismissing the majority of the parties' exceptions. However, the trial court modified the master's recommended alimony *pendente lite* award of $400.00 per week retroactive to May 1, 1988 to an alimony *pendente lite* award of $400.00 per week for the period of May 1, 1988 through June 15, 1989 and $300.00 per week for the period of June 16, 1989 through the date of the entry of the trial court's order. The trial court also directed that the husband pay $300.00 per week in alimony to the wife for a period of four years. The wife filed this timely appeal and the husband filed a cross-appeal.

On appeal, the wife raises the following issue for our review:

1. THE TRIAL COURT IMPROPERLY DETERMINED THAT THE HUSBAND OWNED ONE–THIRD OF HIS ACCOUNTING PRACTICE FOR EQUITABLE DISTRIBUTION PURPOSES WHEN HUSBAND OWNS FIFTY PERCENT OF THE PRACTICE FOR EQUITABLE DISTRIBUTION PURPOSES.

Wife's Brief at 5.

In a cross-appeal, the husband raises the following issues for our review:

1. DID THE LOWER COURT ERR IN ESTABLISHING THE VALUE OF THE PROFESSIONAL CORPORATION PARTLY OWNED BY THE HUSBAND, AND PARTICULARLY THE "INTANGIBLE" VALUE OF THE CORPORATION?

2. DID THE LOWER COURT ERR IN AWARDING COUNSEL FEES TO THE WIFE IN ADDITION TO AWARDING ALIMONY PENDENTE LITE TO THE WIFE?

3. DID THE LOWER COURT ERR BY FINDING THAT THE HUSBAND WAS DUE A CREDIT FOR ONE–HALF OF THE FAIR RENTAL VALUE OF THE MARITAL RESIDENCE BETWEEN DECEMBER, 1984 AND OCTOBER, 1988 AND THEN FAILING TO INCORPORATE SAID CREDIT INTO THE FINAL EQUITABLE DISTRIBUTION ORDER?

Husband's Brief at 1.

The husband and the wife raise various issues on appeal challenging the trial court's affirmation of the master's recommendations. Initially, we note that our standard of review is a limited one. We need determine whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. *Zollars v. Zollars,* 397 Pa.Super. 204, 579 A.2d 1328 (1990), *alloc. denied,* 527 Pa. 603, 589 A.2d 693 (1991); *Malseed v. Malseed,* 388 Pa.Super. 214, 565 A.2d 453 (1989); *Johnson v. Johnson,* 365 Pa.Super. 409, 529 A.2d 1123 (1987), *alloc. denied,* 517 Pa. 623, 538 A.2d 877 (1988). Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence."

*Zollars, supra,* 397 Pa.Super. at 208, 579 A.2d at 1330, quoting *Sergi v. Sergi,* 351 Pa.Super. 588, 591, 506 A.2d 928, 930 (1986). Specifically, we measure the circumstances of the case and the conclusions drawn therefrom by the trial court against the provision of 23 Pa.C.S.A. § 3502(a),[2] and the avowed intentions of the Divorce Code, namely to "effectuate economic justice between [the] parties ... and insure a fair and just determination of their property rights." 23 Pa.C.S.A. § 3102(a)(6).[3] A master's report is entitled to great considerations by, but is not binding upon, the trial court. *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 349, 516 A.2d 10, 15 (1986) (citations omitted).

▮ The wife argues that the trial court erred in affirming the master's findings that the husband owned one-third of the accounting practice. The wife contends that the trial court misapplied the law when it used the day of the hearing as a benchmark for both identifying and valuing the marital assets. The wife argues that the husband's interest in the accounting firm must be identified as of the date of separation or distribution because either of those dates would provide most adequately for economic justice. We agree in part, and we find that the trial court misapplied the law in looking to the hearing date to determine the husband's share of the accounting practice.

Our courts distinguish the date for identifying marital property from the date by which to place a value on marital assets for equitable distribution. *See Adelstein v. Adelstein,* 381 Pa.Super. 221, 553 A.2d 436 (1989); *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928, 930–31 (1986). The Divorce Code mandates the our courts examine the parties' property as of the date of final separation in order to identify which assets are marital property. *See* 23 Pa.C.S.A. § 3501. In the same vein, this Court has stated that the "[e]xistence and nature of marital property are determined as of the date of separation."

2. 23 P.S. § 401 (repealed). The Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.,* replaced the existing code, 23 P.S. § 101 *et seq.* Thus, we will refer to the section numbers under the new code.

3. 23 P.S. § 102 (repealed).

*Adelstein, supra,* 381 Pa.Super. at 225, 553 A.2d at 438. Although marital property is identified at the date of separation, the value of the property is determined at the date of distribution. *Adelstein, supra; Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988).

■ When the parties finally separated in December of 1984, the husband owned a one-half interest in the accounting practice. At the time of the master's hearing in October of 1988, the accounting firm had acquired an additional partner (thus reducing the husband's share to one-third). However, the decisive date on which to determine which of the parties' assets were marital assets available for equitable division was the date of the final separation. Therefore, on remand, the equitable distribution scheme must be based on the husband's fifty percent ownership of the accounting firm of Einhorn, Butler and Gingerich.

In his cross-appeal, the husband argues that the trial court erred in affirming the master's conclusion that the value of the accounting firm was $423,440.50. Specifically, the husband contends that goodwill was improperly included in the valuation of the firm and that the value of the firm is controlled by the buy/sell agreement. We cannot agree.

Admittedly, placing a valuation on a spouse's interest in a small business is a difficult task. However, our courts have addressed the factors to be considered. In *Buckl v. Buckl,* this Court stated that initial consideration must be given to an agreement governing the value of an ownership interest. 373 Pa.Super. 521, 532, 542 A.2d 65, 70 (1988) (*en banc*). However, the *Buckl* court noted that it was mindful that "it is most unlikely that the agreement will deal with valuation of a partner's interest vis a vis equitable distribution upon dissolution of the martial relationship," and that it "must look at the realities of the situation and avoid an unrealistic valuation." *Id.* Thus, other factors must be considered, namely, "the monetary worth of the professional partnership ... diminished by the amount of accounts payable ... [and] any other liabilities not reflected on the partnership books." *Id.* The

*Buckl* court further stated that the partnership's monetary worth

> consist[s] of the partners' capital accounts, accounts receivable, the value of work in progress, any appreciation in the true worth of tangible property over and above book value, together with goodwill, should there be any.

*Id.*

This Court has defined "goodwill" as "the favor which the management of a business has won from the public, and probability that old customers will continue their patronage." *Buckl, supra,* at 530, 542 A.2d at 69. The *Buckl* court correctly noted that "the concept of goodwill is nebulous at best and consequently, the placing of a dollar valuation is most difficult." *Buckl, supra,* at 529, 542 A.2d at 68. We have also described the considerations in deciding whether to include goodwill in the value of a business as follows:

> If the nature of the economic good will is purely personal to the professional spouse, it is not *alienable;* hence, it cannot actually be realized and may not be included in the equitable distribution. If, however, a portion of the economic good will is attributable separately to the corporation or business and can be realized by sale to another (by selling the enterprise in whole or in part, buy-in's and buy-out's included), then *to that extent,* there is good will value subject to equitable distribution.

*Fexa v. Fexa,* 396 Pa.Super. 481, 487, 578 A.2d 1314, 1317 (1990). Whether there is goodwill subject to equitable distribution ultimately depends upon the facts of each particular case. *Id.*

■ The husband alleges that the trial court erred in not relying solely on the buy-sell agreement in placing a value on his interest in the accounting practice. In support of this argument, the husband cites our Supreme Court's decision in *McCabe v. McCabe,* 525 Pa. 25, 575 A.2d 87 (1990). Husband argues that *McCabe* mandates a valuation based on the buy-sell agreement alone.

In *McCabe, supra*, our Supreme Court held that this Court properly remanded the case to the trial court to re-determine the distribution award based on the value of the husband's partnership interest as listed in the partnership agreement, rather than the going concern value ascribed by the trial court. *Id.* at 31, 575 A.2d at 89. The Supreme Court determined that it would be inequitable to apply a going concern value to the husband's partnership interest where the going concern value could never be realized by the husband because the husband's shares could not be publicly or privately traded (thus there was no market for establishing the value of the partnership interest), the firm could not be sold or liquidated at a partner's direction, and, under the partnership agreement, a partner could not:

> remove from the firm a proportionate share of the accounts receivable, work-in-progress accounts, or other accounts included in the 'going concern' value [;] ... receive a proportionate share of the firm's total value, including equipment, accounts receivable, etc; ... sell his interest to another individual; ... [or] retire from the firm and continue to receive a share of the firm's profits.

*Id.*

The husband argues that *McCabe* is factually analogous to the case at hand and mandates that the trial court value his interest in the accounting practice at $2,450.00, as fixed by the buy-sell agreement entered into by the husband and his fellow shareholder. We do not agree.

The facts in *McCabe* are distinguishable in several respects. First, the husband in *McCabe* was one of many partners in a large law firm. 525 Pa. at 28, 575 A.2d at 88. Here, the husband was one of two shareholders at the time of the parties' final separation. Second, the partnership agreement in *McCabe* limited the partner's recovery upon leaving the firm to his share of the capital account, less indebtedness to the firm and his share of undistributed profits, *id.*, and provided that the same sum was payable upon the death of a partner. *Id.* at n. 1. Here, the buy-sell agreement specifies that upon termination of employment or disability, the compa-

ny would purchase the husband's shares for $10.00 each, or a total of $2,450.00. However, in the event the husband died owning shares, the company would purchase them for $100,-000.00. Thus, in contrast to *McCabe,* the agreement here does not give a clear valuation for the husband's interest.

In *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986), this Court concluded that a sole proprietorship did not have goodwill for equitable distribution. The *Beasley* court stated:

[a] sole proprietorship can be distinguished from a partnership, or a professional corporation, to which an ascertainable value can be ascribed for the purpose of buying into or withdrawing from the relationship; *but it is the association, or some share of it, that is valued* and not the individual partner upon which the value is placed. *See Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.1978). The productivity or work effort of the partner is often not the measure of the share possessed by various members of the association. That share is a measurable and marketable commodity and is generally defined by contract. When a sole proprietor terminates his activity, the lights go out, the value of the sole proprietorship is extinguished and is nontransferable; the clients in the law firm cannot be sold, they can only be transferred and they have the absolute right to select their own future representation; nothing remains in residue which could be determined of value aside from tangible physical property, or work performed on partially completed cases, which may entitle the lawyer or his heirs to a quantum meruit payment.

*Id.* 359 Pa.Super. at 35, 518 A.2d at 552. There, the husband, a sole proprietor, alone generated business. The clients patronized the husband, not the firm. Thus, goodwill was not included in the equitable distribution of marital property.

Similarly, in *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987), this Court did not include goodwill when valuing a spouse's business for equitable distribution. There, as in *Beasley,* the court considered the husband, a medical doctor with a specialty in rheumatology, to be a sole practitioner. The *DeMasi* court reasoned that because the husband did not

share clients with his partner, the goodwill of the husband's practice was merely personal and had no "present value" to be distributed. *Id.* at 44–45, 530 A.2d at 884.

On the other hand, this Court has determined that goodwill ought to be included in the value of a spouse's business. In *Fexa, supra,* we concluded that the value of the husband's interest in a dental practice contained goodwill subject to equitable distribution. There, we noted that although the dental practice experienced several changes in its partnership makeup,

> [t]he form of the business and its work continued unchanged, ... thereby demonstrating that the good will of the clients of the business toward the business was not tied exclusively to the presence or skills of particular individuals but was tied to some extent to the service that could be provided by any of a number of dentists.... The good will was capable of being valued for the purpose of buying into or withdrawing from the partnership itself, making it an asset to the business, rather than a purely personal asset.

*Fexa, supra,* 396 Pa.Super. at 489, 578 A.2d at 1318.

■ Instantly, we find that the goodwill value of the accounting firm of Einhorn, Butler, and Gingerich is a business asset subject to equitable distribution. A close scrutiny of the record reveals that the facts in this case are more similar to *Fexa* than to *Beasley* and *DeMasi.* Here, the husband's father established the accounting practice, and the husband joined the firm after graduating from college. Following the husband's father's death, a third shareholder came into the firm and was subsequently bought out, yet the firm still remained. Therefore, the husband's practice cannot be equated with a sole proprietorship as in *Beasley* and *DeMasi.* Moreover, the husband himself acquired clients from his father, warranting an inference that the clients had some loyalty to the firm rather than a particular accountant's skills.

The husband next raises the issue of whether the trial court may award both alimony *pendente lite* and counsel fees and costs. The husband contends that the trial court erred in awarding the wife fifty-five percent of the marital assets,

together with alimony *pendente lite,* and counsel fees. We cannot agree.

The recommendations of the master in a divorce proceeding, although entitled to careful consideration, are advisory only; the trial court is required to review the master's report, determine if his or her recommendations are appropriate, and enter a final decree. *Reed v. Reed,* 354 Pa.Super. 284, 511 A.2d 874 (1986). However, the determination of the amount of alimony *pendente lite* warranted rests in the first instance on the trial court's exercise of sound discretion; absent an abuse of discretion, a trial court's award of alimony *pendente lite* will not be disturbed. *Miller v. Miller,* 352 Pa.Super. 432, 508 A.2d 550 (1986).

The purpose of alimony *pendente lite* is to sustain the dependent spouse on an equal basis with the other spouse while he or she maintains or defends a divorce action. *Krakovsky v. Krakovsky,* 400 Pa.Super. 260, 583 A.2d 485 (1990). The simple fact that one spouse earns more than the other spouse does not automatically entitle the other spouse to alimony *pendente lite.* Rather, the spouse seeking alimony *pendente lite* must need such relief to adequately defend his or her rights in the principal litigation. *Sutliff v. Sutliff,* 326 Pa.Super. 496, 474 A.2d 599 (1984).

Instantly, the trial court reviewed the master's recommendations that the wife receive alimony *pendente lite* and concurred with the report. The trial court weighed the relevant factors necessary to determine an award of alimony *pendente lite* and determined that the wife was entitled to alimony *pendente lite.* Our review of the record reveals that there was a great disparity between the income levels of the parties, with the husband enjoying a substantially higher income. Also, the record shows that the wife resorted to selling her jewelry to maintain the divorce proceedings. Accordingly, we find ample evidence in the record to support the trial court's finding that the wife was entitled to alimony *pendente lite.*

The purpose of an award of counsel fees is to ensure that the financially dependent spouse will be able to maintain or defend against an action for divorce, as well as to effectuate economic justice. *Schubert v. Schubert,* 398 Pa.Super. 284, 580 A.2d 1351 (1990). Counsel fees in a divorce proceeding are not awarded automatically; the petitioning spouse must show actual need before such an award is justified. *Kohl v. Kohl,* 387 Pa.Super. 367, 564 A.2d 222 (1989). Moreover, a "dependent spouse may be entitled to alimony pendente lite and counsel fees because both are necessary to maintain the divorce proceeding." *DeMasi, supra* at 530 A.2d at 880. The amount of an award for counsel fees, costs, and expenses awarded in a divorce action is within the discretion of the trial court and is subject to an abuse of discretion standard on appeal. *Williamson v. Williamson,* 402 Pa.Super. 276, 586 A.2d 967 (1991).

Here, the trial court adopted the master's recommendations that, due to the great disparity in the parties incomes, the wife was entitled to have the husband pay a portion of her counsel fees and costs. Simply because the wife will receive alimony *pendente lite* and fifty-five percent of the marital estate does not preclude an award of counsel fees and costs. Our review of the record reveals that the assessment of the wife's counsel fees and costs to the husband allows the wife to defend herself in this divorce action and effectuates economic justice. Accordingly, we find no abuse of discretion in the trial court's adoption of the master's recommendation that the husband be ordered to pay a portion of the wife's counsel fees and costs.

Finally, the husband asserts that the trial court improperly credited him with the fair rental value of the marital residence. The husband argues that the trial court erred in including the fair rental value of the marital residence, $34,-500.00, in the marital estate, then crediting the wife as having received her share of the fair rental value. We agree.

A court engaged in equitably distributing the marital estate must consider the efforts each spouse expended to

preserve marital assets. *See* 23 Pa.C.S.A. § 3502(a)(7). Thus, an equitable distribution scheme may include an award, to the non-possessing spouse, of one-half of the rental value of the marital residence, when possessed exclusively by the other spouse during the parties' separation. *Powell v. Powell,* 395 Pa.Super. 345, 577 A.2d 576 (1990); *Gruver v. Gruver,* 372 Pa.Super. 194, 200, 539 A.2d 395, 398 (1988); *Hutnik v. Hutnik,* 369 Pa.Super. 263, 270, 535 A.2d 151, 154 (1987); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983). However, we have also upheld *deductions* from rental value awards for: the non-possessing spouse's share of expenses related to preserving the marital residence (*i.e.* mortgage, insurance, taxes, maintenance), *see Powell; Hutnik; Gee,* and for amounts owed by the non-possessing spouse to the possessing spouse's parents. *See Gruver, supra,* 372 Pa.Super. at 200, 539 A.2d at 398.

While we have affirmed the trial court's awarding one spouse a portion of the rental value of the marital home, when possessed exclusively by the other spouse, an award of rent is not mandatory. In *Sutliff v. Sutliff, supra,* we affirmed an equitable distribution scheme which lacked an award for rent for the non-possessing spouse. 361 Pa.Super. 504, 522 A.2d 1144 (1987), *reversed on other grounds,* 518 Pa. 378, 543 A.2d 534 (1988). *See also King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). In declining to mandate such a practice, we stated in *Sutliff* that:

> [a]lthough an award of rent is permissible, we do not deem it an abuse of discretion by the court to refuse to take such an action in this case.... We evaluate the court's decision in light of the totality of the circumstances and the equitable distribution order as a whole.

361 Pa.Super. at 525, 522 A.2d at 1154. Likewise, in *Powell, supra,* we stated: "[i]n the trial court's discretion, he [the non-possessor spouse] *may* be entitled to a portion of the fair market rental value of the marital home." 395 Pa.Super. at 361, 577 A.2d at 584 (emphasis added). This is consistent with our opinion in *Hutnik, supra,* where we held that the spouse who is out of possession must be compensated for his or her

rights and interests in the marital property, and that an award of fair market rental value of the marital residence, while in the exclusive possession of the other spouse, was one proper means of compensating the non-possessor. *See also Gee, supra* (rental payments, though not specifically requested, compensated the non-possessor spouse for rights and interest in land and not abuse of discretion).

██ Here, the husband left the marital residence and the wife remained in the home with the couple's youngest child and their older children, who would return to the marital home on school vacations. Although he was not in possession of the marital residence, the husband preserved the marital residence by paying the mortgage payments, insurance, bills and utilities from the time of separation until October, 1988. The trial court included the fair market rental value of the marital residence as an asset in the marital estate. Having included the fair market rental value in the marital estate, the trial court then credited the wife as having received her one-half of the rental value. We find the methodology employed by the trial court of adding in the entire fair market rental value into the marital estate as a marital asset before the division of the marital estate, then multiplying the entire marital estate by wife's fifty-five percent share and granting the husband a credit from this figure of one-half the fair market value of the marital home to be incorrect for the following reasons.

The fair market rental value of the marital residence cannot be considered a marital asset subject to equitable distribution as it represents revenues that were foregone by the marital estate due to the wife's residence in the property after the parties separated. Therefore, the fair market rental value of the marital home was improperly deemed a marital asset by the trial court, thereby artificially inflating the value of the marital estate. As the wife's share of these foregone potential revenues, which would have been part of the aggregate marital estate, were consumed during her tenure in the marital home; she is not entitled to receive any portion of these foregone revenues. Accordingly, the proper methodology for

548

granting the husband a credit for his share of the foregone fair market rental value of the marital residence is to deduct his share of the foregone revenues from the wife's ultimate distribution of the marital estate.

In addition, we note that the trial court incorrectly calculated the fair rental value based on forty-two months. The husband financially maintained the marital residence while the wife enjoyed exclusive possession for forty-seven months, not forty-two months. Thus, the trial court should have used the forty-seven month figure in its calculation of the fair rental value of the marital home.

In light of our determination that the trial court erred by using the hearing date in its valuation of the husband's business rather than the date of separation, and both its improper inclusion of the fair market rental value of the marital home into the marital estate and its failure to calculate the fair market rental of the marital home based upon the forty-seven months that the wife exclusively possessed it, the order of equitable distribution must be vacated and the matter is remanded for further proceedings. Additionally, as the trial court's usage of the separation date for the valuation of the husband's business will substantially change the economic positions of the parties and upset the original carefully crafted scheme of the trial court's order concerning alimony *pendente lite*, counsel fees and costs, the distribution of the marital estate, and the wife's alimony award, we are constrained to vacate entirely the trial court's order and remand the case for proceedings consistent with this opinion, so that economic justice between the parties may be achieved.

Order vacated and remanded. Jurisdiction relinquished.