**O'Brien v. O'Brien**

C.P. of Monroe County, No. 1375 DR 2011; 11043 CV 2011

*Megan Reaser*, for plaintiff.
*Lawrence F. Finn*, for defendant.

HARLACHER SIBUM, *J.*, Monroe Sept. 30, 2014—This matter comes before the court after argument on Martin O'Brien's exceptions to the master's report of Robert C. Lear. On March 16, 1978, plaintiff Lou-Ann O'Brien ("wife") and Martin O'Brien ("husband") were married. The couple has three adult children. On December 1, 2011, the parties separated and on December 22, 2011, wife instituted the within action in divorce by complaint. On January 17, 2013, Robert C. Lear, Esq., was appointed

as the divorce master to hear this matter. After multiple continuances, master's hearings were held on July 15, 2013 and December 11, 2013. On March 18, 2014, the master filed his master's report ("report") to which the defendant filed exceptions on April 7, 2014. After receiving briefs from both parties, we heard arguments on husband's exceptions on June 2, 2014. After review of the master's report, husband's exceptions, husband's and wife's briefs, and in consideration of the representations made at oral arguments, we are prepared to decide this matter.

## DISCUSSION

As a preliminary matter, we note that while a master's report is advisory only, it is given great deference. *See Fiorilli v. Fiorilli*, 198 A.2d 369 (Pa. Super. 1964). Nonetheless, "[a] reviewing court has a duty to make a complete and independent review of the proceeding below." *Rollman v. Rollman*, 421 A.2d 755 (Pa. Super. 1980).

The rules of procedure require that, where exceptions are filed to a master's report, each exception must set forth a separate objection precisely and without discussion. Pa.R.Civ.P. 1920.55-2(b). The court must address all issues that are raised in good faith, and the fact that the number of errors alleged is large does not automatically result in waiver. *See Reinert v. Reinert*, 926 A.2d 539 (Pa. Super. 2007).

With this standard in mind, we set forth the following analysis on husband's seventeen exceptions. For purposes of judicial economy, we collectively analyze certain exceptions which could be logically grouped. Husband's exceptions have been grouped into the following categories: vehicle disposition, real estate, cash/liquid assets, alimony issues, and counsel fees.

(1) Vehicle Disposition

In regards to exceptions (A), (H), and (I), we find that the master did not err in his valuations and distribution of the vehicles in question. Husband argues that ownership of some of the vehicles was predetermined by a prior PFA agreement. However, we find the master was correct in his distribution of these vehicles as the PFA related to the specific time and duration of the agreement and was not a permanent transfer of title or a waiver of equitable distribution rights. Further, with respect to the value of the multiple marital vehicles, husband failed to present concrete or convincing evidence relating to the current market value of any of the vehicles in question. Husband presented only vague and unverifiable estimations as to their value. No documentation or appraisals were submitted to the master regarding the vehicles. As such, the master was forced to conduct his own valuation. Master Lear gives a reasonable basis for his valuing of the vehicles, including the motor home, the transmission of which was in poor condition.

Husband next argues that the master erred because he used the Kelly Blue Book, a hearsay document, to determine the value of these vehicles. Even though proceedings before the master must adhere to the Pennsylvania Rules of Evidence, the use of the Kelly Blue Book was proper because it falls under Pa.R.E. 803(17), allowing "market reports and similar commercial publications". We find that the Kelly Blue Book reports as to the value of motor vehicles were properly admitted under this exception to the hearsay rule.

Further, husband contends that the 50%/50% division of the value of the vehicles is inequitable and in error in light of the 45%/55% division of other property the

master awarded in favor of wife. The master found that these vehicles were to be divided equally; thereby giving husband more value than he would have had if the master adhered to the 45%/55% division of the other marital property. Not only do we find husband's arguments in this regard unwise, but meritless as well.

Husband particularly claims that the master committed error in determining the value of the 1976 Corvette. Both husband and his close friend, Anthony Tarantino, testified that the car was valued greater than the $3,700 value for which the vehicle was sold. Transcript of record, at 97, *O'Brien v. O'Brien*, 11043 CV 2011, 7/15/2013; Transcript of record, at 60, *O'Brien v. O'Brien*, 11043 CV2011, 12/11/2013. However, Mr. Tarantino's expertise and certification were in automobile mechanics, not valuation. Transcript of record, at 88, *O'Brien v. O'Brien*, 11043 CV 2011, 7/15/2013. Husband did not present any objective valuation of the vehicle that placed its value in the $65,000 range he claimed it was worth. Transcript of record, at 62, *O'Brien v. O'Brien*, 11043 CV 2011, 12/11/2013. In fact, at the time wife sold the vehicle, it had not been started in four or five years because the rear end gears were blown out, and possibly the engine. Transcript of record, at 168-69, *O'Brien v. O'Brien*, 11043 CV 2011, 7/15/2013.

After evaluating the master's recommendations for the valuation of the vehicles in light of the testimony and exhibits on file, this court finds no error in the master's valuation and distribution of the vehicles. The master has latitude in valuing these items, especially where there is no current appraisal testimony offered. We find that master Lear had a reasonable basis for his conclusion. The car is no longer available to be appraised and no evidence was proffered to show how much it would cost

to repair the vehicle. Though Mr. Tarantino was familiar with the car, he was not admitted as an expert in vehicle valuation and did not testify to the cost of the vehicle in the condition in which it was sold. In fact, he had not seen the car since it ceased functioning properly. We find master Lear's recommendations appropriate given the evidence presented. Accordingly husband's exceptions dealing with vehicle valuation and distribution are denied.

(2) Real Estate

Husband filed exceptions to the master's report regarding the disposition of assets for two pieces of property, the former marital residence at 276 Cedar Drive, Long Pond, Pennsylvania, and wife's jointly owned Florida property. These exceptions are noted in exceptions (B), (G), and (T).

First in regard to the former marital residence, husband argues that the terms and procedure determined by the master for sale were in error. We disagree and affirm the master's findings. The master's plan avoids the possibility of further disagreement as neither party wants the house. We also note that an expedited sale in this case is desirable as there is a tax lien on the property and a substantial amount of overdue home owner's association dues. Moreover, no one is currently living in the residence, making the property more susceptible to vandalism while unoccupied. We find no error in the master's procedure for disposal of the marital home and, thus, husband's exception (B) is denied.

Next in exception (T), husband alleges that wife should be required to pay $3,500 for the time period in which she had exclusive possession of the marital home (1/2013-7/2013). Husband's expert testified the rental value of the marital

property to be $1,000 per month. Transcript of record, at 11, *O'Brien v. O'Brien*, 11043 CV 2011, 7/15/2013. Husband's calculation of seven months of potentially earned rent divided by two equates to the $3,500 he claims to be owed by wife. However, the record indicates that wife tended to the upkeep of the home and paid fees associated with home ownership, including the taxes as well as the homeowner's fees to the Emerald Lake Community Association. As the record does not indicate husband contributed in this regard, we find husband's demand for rent to be erroneous. Further, the determination and award of the rental value of property is an equitable determination that may be awarded on a discretionary basis. *Butler v. Butler*, 621 A.2d 659, 668 (Pa. Super. 1993) *aff'd in part, rev'd in part*, 663 A.2d 148 (1995). As such, we find that master Lear's decision to exclude this calculation from his distribution scheme was not an abuse of discretion. Husband's exception (T) is denied.

Lastly on the matter of real estate, husband, in exception (G) claims that the master erred in not crediting wife with having constructive income from her one-third interest in an inherited property in Florida. Wife inherited a one-third interest in property in Florida from her mother. Her two brothers owned the remaining two-thirds. One of wife's brothers lives on the property and pays the taxes, insurance, and maintains the property but does not pay the other co-tenants rent. It is husband's position that wife should have been credited with having "constructive" rental income from this property during the marriage that he is entitled to.

The master took this property into account when determining the equitable division of the property. However, husband claims entitlement to the constructive value of the rent that the wife did not receive. It is well

settled law in Florida, and almost all other jurisdictions, that unless there are extraordinary circumstances, a tenant in common who has exclusive possession of real property and who uses it for his or her own benefit without receiving any rents or profits therefrom, is not liable or accountable to a co-tenant out of possession unless such possession is adverse to or the result of ouster. *Brisciano v. Byard*, 615 So.2d 213 (Fla. 1st DCA 1993); *Fitzgerald v. Fitzgerald*, 558 So.2d 122 (Fla. 1st DCA 1990); *Goins v. Goins*, 762 So.2d 1049 (Fla. Dist. Ct. App. 5th Dist. 2000). Relatedly, it has been held that it is not necessary that a tenant in common have been excluded from the premises in order for the occupying tenant to be held liable for the rental value to off-set the amount sought in contribution from a co-tenant for taxes, maintenance, and other expenses. *Barrow v. Barrow*, 527 So.2d 1373 (Fla. 1988).

Here, there is no adverse possession of the co-tenant in possession and the co-tenant has not excluded wife. Thus, no rental income is owed to wife and she has not accrued constructive income simply because one tenant chose to live in the house and wife chose to live elsewhere.

Husband also claims the master erred in refusing to allow him to testify to the increase in value of the Florida property. He cites *Semasek v. Semasek*, 502 A.2d 109 (Pa. 1985) which held that owners of property are considered experts when testifying as to the property's value. *Semasek*, 502 A.2d at 110 (citing *Sgarlat Estate v. Commonwealth*, 158 A.2d 541 (Pa. 1960)). There is a line of jurisprudence that states that if there is no manner for determining a property's value, the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation. *See*

*Pittsburgh R. Co. v. Patterson,* 107 Pa. 461 (Pa. 1884).

Here, husband claims that he is the owner of his marital share in the increase in value of the Florida property. Master Lear made a distinction between an equitable owner and a legal owner and excluded husband's testimony. We agree with master Lear's decision. Pennsylvania cases have allowed an owner to testify about the value of a property if he had a legal interest in the property. Here, although husband claims that he is familiar with wife's Florida property from visiting for vacation when the couple was still together, he is not the owner of the property and we will not extend this rule to non-owners. Thus, we find that master's exclusion of husband's testimony pertaining to the increase of value of the Florida home to be without error and husband's exception (G) is denied.

(3) Cash/Liquid Assets

The vast majority of husband's exceptions relate to the master's characterization and valuation of assets and the status of the parties. The master divided the marital property based on these characterizations and valuations. Husband's exceptions on this matter are as follows: (F) to the marital checking account, (J) to his earning capacity, (M) to wife's status/earning capacity, (N) to the auctioning of personal property, (Q) to the annuity distribution, (R) to division of personal property, and (S) to the division of husband's pension. Instead of responding to husband's exceptions in this category individually and to avoid repetitive analysis, we instead largely defer to the master's discretion.

As we have previously discussed, master Lear is given great discretion in his distribution of the marital property and we find that he employed that discretion appropriately and in a standard manner. In his report master Lear detailed

a litany of factors he considered when determining how to divide the property and the most equitable means to effectuate the division. Wife's status over the last thirty plus years as a mother and homemaker contributed greatly to the master's findings. Husband has been working, although sporadically, throughout the duration of the marriage and had the ability to accumulate a pension and benefits. These factors, along with the others supporting the master's conclusions, provide this court with the facts and adequate reasoning to affirm the master's division of the sale of real estate, the pension funds, and the annuity at 45%/55% in favor of wife. Given these factors, the master's distribution of the pension and other accounts are not in error.

We also find sufficient support for the master's valuation and 50/50 distribution of the personal property. Husband avers master Lear ignored the evidence and supplanted his own idea of the value of the marital personal property. In his report, master Lear stated that there was a normal amount of personal property within the residence including used TVs, furniture, appliances, albums, etc. At the hearings, husband testified that the value of these items totaled $117,820.00. The master stated in his report that he did not find this to be a reasonable valuation of used household items that are in a $150,000 house. Master Lear recommended that any items currently in possession by both husband and wife stay in their respective possession. The appliances necessary to expedite the sale of the home, i.e. washer/dryer, freezer, stove, etc., should be returned to the residence. Due to husband's questionable valuation of the property, master Lear did not value the remaining property and recommended that the remaining personal property items be auctioned with the net proceeds from the auction being divided on a 50/50 basis.

Master Lear found husband's valuation "difficult to believe" which ultimately is a credibility determination which is given great deference in these matters. The divorce code does not specify a particular method of valuing assets subject to equitable division under § 3502. *See Smith v. Smith*, 904 A.2d 15, 21 (Pa. Super. 2006). Thus the court must "exercise discretion and rely on estimates, inventories, records of purchase prices, and appraisals submitted by both parties." *Id.* When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." *Schenk v. Schenk*, 880 A.2d 633, 642 (Pa. Super.) (citation omitted). Given the evidence and testimony presented, we find master Lear's recommendations appropriate. As such, husband's exceptions (E) and (N) are denied.

In husband's brief, he states that there was no evidence presented at either hearing concerning the small amount of money in the parties' joint checking account and it has subsequently been utilized by the parties. Thus, husband's exception (F) is dismissed as moot.

(4) Alimony Issues

As discussed above, husband has filed exceptions to the award of alimony (exceptions (D) and (U)). These findings support the award of $750 per month for four years of alimony to wife to allow her to establish a decent standard of living in her new location. For the reasons above, as well as the factors listed and considered by the master, we find no error in the master's findings. As such, husband's exception (D) is dismissed. Exception (U) has been acknowledged by husband to be moot and will also be dismissed as such.

(5) Counsel Fees

Husband argues in exception (C) that the granting of counsel fees and expenses to the wife is arbitrary, denies him due process and a fair hearing, is against the weight of the evidence and has a chilling effect in that it penalizes him for asserting his rights to present a legitimate defense of indignities. We agree.

An award of counsel fees is warranted when it will promote the fair administration of justice by enabling the dependent spouse to maintain or defend the case without being placed at a financial disadvantage. *Perlberger v. Perlberger*, 626 A.2d 1206 (Pa. Super. 1993). Counsel fees are awarded based on a review of all relevant factors, including the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Id.* at 1207; *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004); *Miller v. Miller*, 744 A.2d 778, 790-91 (Pa. Super 1999).

Both husband and wife requested counsel fees, costs and expenses. Testimony revealed that wife had approximately $15,000 in attorney's fees and husband had nearly $30,000 in fees. The master stated that considering the small size of the marital estate, these fees were "substantial" and realistically out of proportion to the assets. The master indicated that had it not been for the husband's refusal to execute an affidavit of consent at the first hearing, the case could have been addressed in one day and the parties would not have needed the second and more costly hearing. Master Lear found that husband delayed the process by disputing the indignities and decided wife was entitled to $2,500 to be paid toward her counsel fees.

We find the master's award of $2,500 to the wife for legal fees to be in error and disproportionate to the actual delay caused. We will not require husband to pay wife's fees

simply because he did not settle the matter more promptly. While we find that both parties caused unnecessary delay and obstruction to the finalization of the divorce, we will not penalize a litigant for presenting a valid defense to a claim. In fact, the testimony indicates that the master stated "I think he [husband] has an absolute right when there's an indignities in play he has a chance to rebut it." Transcript of record, at 142, *O'Brien v. O'Brien*, 11043 CV 2011, 7/15/2013. It is inconsistent for the master to make this statement on one hand and then to force payment of attorney's fees for exercising that right on the other.

If a proceeding is undertaken solely for the purpose of delay or is frivolous in nature, costs such as counsel fees may be imposed against the party causing the delay. *Thunberg v. Strause*, 682 A.2d 295, 302 (Pa. 1996). But, where a party is reasonably contesting an issue or presenting a reasonable defense, attorney's fees should not be imposed. *See Blunt Ltd. v. W.C.A.B. (Riley)*, 654 A.2d 253, 255 (Pa. Commw. Ct. 1995) (finding that a reasonable contest of employer liability precludes an award of attorney's fees for those proceedings in favor of plaintiff). Here the record supports husband's contest to wife's claim of indignities. The testimony on record, combined with the master's statement that husband had a right to defend the claim, suggests to the court that husband should not be responsible for paying wife counsel fees solely for contesting the issue of indignities. This analysis in conjunction with the above mentioned factors including payor's ability to pay (husband is receiving less marital assets than wife; wife is receiving substantial assets that will enable her to pay her fees) and the value of the services rendered (husband had nearly double the amount of fees to pay for) suggest an award of attorney fees to be

improper. Husband's exception issue (C) is granted.

## DECREE

And now, this 30th day of September, 2014, upon consideration of the hearing transcripts, the masters report, and following a hearing and consideration of the parties' briefs, it is ordered and decreed as follows:

1. Lou-Ann O'Brien and Martin O'Brien are divorced from the bonds of matrimony.

2. Husband's exceptions (A), (B), (D), (E), (G)-(J), (M), (N), (Q)-(T) are denied.

3. Husband's exception (C) is granted and the master's recommendation is modified to provide that husband is not required to pay wife $2,500.00 in counsel fees and expenses.

4. Husband's exception (F) and (U) are dismissed as moot.

5. In all other aspects, the master's recommendation is adopted as an order of the court and the parties are directed to carry out the terms thereof.